In the Matter of John P. HUCKNALL, Debtor.

Janice S. BIRNBAUM and Saul I. Birnbaum, as Co-Executors of the Estate of Bernard P. Birnbaum, and Saul I. Birnbaum, Individually, Plaintiffs,

v.

John P. HUCKNALL, Individually and as Debtor-In-Possession, Defendant.

Bankruptcy No. 79–1034.

United States Bankruptcy Court, W. D. New York.

Feb. 15, 1980.

Relin & Goldstein by Lloyd H. Relin, Rochester, N. Y., for plaintiffs.

John A. Belluscio, Rochester, N. Y., for defendant.

## MEMORANDUM AND DECISION

EDWARD D. HAYES, Bankruptcy Judge.

This is an action to lift the stay under 11–44(d) or in the alternative to return the premises to the plaintiffs who are landlords of the defendant.

The facts are as follows. The defendant is an insurance agent who rented the premises in question from the plaintiffs for a term of five years commencing on or about November 1, 1977. Prior to this, the premises had been an A&P store. The defendant, after the lease, converted the premises into a disco, which he is operating under the assumed name of "Club Two on Two". In order to operate as a disco, the defendant remodeled the premises changing them from the typical supermarket into a multi-level disco. He also made certain improvements to the parking lot in front of the store.

He failed to pay his rent in September, 1978 and a letter of demand was sent to him thereafter. The payment had not been made because Hucknall's check for the September rent was uncollectable. He subsequently wrote another check for the rent in October, which was again uncollectable. To date, the September rent for 1978 has not been collected. An action was commenced in the State courts to evict Mr. Hucknall from the premises.

On April 19, 1979, an involuntary petition had been commenced against the debtor. The debtor was adjudicated on May 17, 1979 and subsequently filed a petition converting the matter to a Chapter 11 on June 7, 1979. The eviction proceeding was stayed by Rule 11–44(a) of the Bankruptcy Rules. This action has been commenced to either lift the stay or to give the landlords possession of the property.

At the time of the trial, the debtor had not made payments of rent for September, 1978 and September, October, November and December of 1979. Taxes which were to be paid by Hucknall and which were not paid totaled $2,821.74. The plaintiffs claim that Hucknall also owes $154.32 on common area maintenance. There is presently owing to the plaintiffs the sum of $12,144.39. Plaintiffs hold a security deposit of $2,500. At least three of the checks which Hucknall has tendered for monthly rental have been returned for insufficient funds and are included in the total set forth above.

Mr. Hucknall testifying on his own behalf, stated that he had spent about $130,-000 to $135,000 in renovating the premises. However, at the trial, he was only able to show us checks for about $50,000 spent on rehabilitation. The rehabilitation of the premises was extensive. But the rehabilitation was to adapt the premises from its use as a supermarket to its use as a disco.

Mr. Hucknall has filed a plan to pay his creditors totaling between $500,000 to $600,000, seventy-five cents on the dollar. The plan has been voted for by creditors, but the confirmation hearing has not been held by this Court. To accomplish the arrangement, he has available a farm, which is probably mortgaged beyond its value, the Club Two on Two and the equipment therefore. In addition, he owns an insurance agency, which is producing little or no money at the present time and which is in a companion Chapter 11. He has no other means to finance the arrangement.

As part of his personal Chapter 11, he has been required by the order permitting him to do business to file monthly financial statements with the Court. The statement which he filed for the month of October 31, 1979 was introduced as evidence in this proceeding. This statement also summarized the profit and loss and cash flow statements for the period June, 1979 to October 31, 1979. The month of October showed a profit of $2,815. The period June through October of 1979 showed a net loss of $13,379. The cash flow statements for the two periods of time showed no rent paid in October and a total rent paid from June through October of $5,003. A positive cash flow is shown because some expenses incurred were not paid.

The defendant relies heavily on the *Queens Boulevard Wine and Liquor Corporation v. Blum*, 2nd Cir., 503 F.2d 202, arguing that the defendant has spent at least $50,000 rehabilitating the property of the plaintiffs; and that the only substantial payments to creditors must come from the Club Two on Two.

The plaintiffs on the other hand rely primarily on *In re D. H. Overmyer, Co., Inc.*, 2nd Cir., 510 F.2d 329, which was decided after *Queens Boulevard*. They take the position that the lease was terminated by notice prior to the filing of the petition in bankruptcy; that at best the debtor is a month to month tenant; that the lease was terminated by operation of the bankruptcy termination clause therein; that the bankrupt has failed to make payments of half of the rent and taxes that were due since the filing of the petition of the Chapter 11 as well as some prior thereto and finally, that the plan proposed by the debtor is impossible of performance.

The *Queens Boulevard* case (supra) is really an exception to § 70b of the Bankruptcy Act which is set forth below:

"   .   .   but an express covenant that an assignment by operation of law or the bankruptcy of a specified party thereto or of either party shall terminate the lease or give the other party an election to terminate the same is enforceable .   . ."

In *Queens Boulevard* the debtor was one month delinquent in rent when it filed its petition for reorganization and it had actually tendered the rent by certified check to its landlord. The Court had also found that the conduct of the landlord post-petition evidenced an intention to continue the lease and to accept rent payments. This agreement was withdrawn when a better paying tenant appeared on the scene.

The Court in *Overmyer* expresses the general rule with regard to termination clauses in contracts and while it recognizes *Queens Boulevard* (supra) as an exception the Court at page 333 says:

"The central issue in the many proceedings before the bankruptcy judge was whether he should exercise his equitable power to allow the debtors to remain in possession, despite the fact that the leases had either already been terminated at the time of bankruptcy[2] or were subject to termination upon bankruptcy. The court declined to do so because it found a pervasive pattern of abuses by Overmyer in its relationship with the landlords and no realistic prospect for future improvement. It was not necessary for the court to list the exact figures in the case of each lease in order to justify that conclusion."

In the present case, I agree with the plaintiffs that the lease was terminated by nonpayment of rent prior to the filing of any petition in bankruptcy; that the bankruptcy termination clause is effective in

accordance with § 70b of the Bankruptcy Act; that the debtor has been unable to earn enough money from the Club Two on Two while in Chapter 11 to pay the rent for at least half that period; and finally that despite the willingness of his unsecured creditors to go along with his plan of reorganization that the plan is not really capable of performance. Therefore, none of the equities exist which would permit the continuation of this lease under the exception set forth in *Queens Boulevard* (supra). Indeed, the equities of the situation call out for the termination of the lease and a return of the property to the plaintiffs and it is so ordered.

This Memorandum and Decision shall constitute Findings of Fact and Conclusions of Law in accordance with Rule 752 of the Rules of Bankruptcy Procedure.