In the Matters of MIMI'S OF ALTANTA, INC., Max' Restaurant, Inc., Exeter Restaurant Corporation, Debtors.

In re MIMI'S OF ATLANTA, INC., Debtor.

OMNI INTERNATIONAL, LTD.,
Plaintiff,

v.

MIMI'S OF ATLANTA, INC., Defendant.

In re MAX' RESTAURANT, INC., Debtor.

OMNI INTERNATIONAL, LTD.,
Plaintiff,

v.

MAX' RESTAURANT, INC., Defendant.

In re EXETER RESTAURANT CORPORATION, Debtor.

OMNI INTERNATIONAL, LTD.,
Plaintiff,

v.

EXETER RESTAURANT CORPORATION, Defendant.

In re MIMI'S OF ATLANTA, INC., Debtor.

INTERNATIONAL CITY CORPORATION, Plaintiff,

v.

MIMI'S OF ATLANTA, INC., Defendant.

In re MIMI'S OF ATLANTA, INC., Debtor.

I. T. T. Industrial Credit Company, Movant.

Bankruptcy Nos. 80–01015A to 80–01017A.

Adversary Nos. 80–0287A, 80–0289A, 80–0326A and 80–0288A.

United States Bankruptcy Court, N. D. Georgia, Atlanta Division.

Aug. 13, 1980.

Thomas C. Shelton, Kilpatrick & Cody, Dennis S. Meir, Atlanta, Ga., for plaintiff.

Morris W. Macey, Macey & Zusmann, Atlanta, Ga., for defendant.

## MEMORANDUM IN SUPPORT OF JUDGMENT AND ORDER

A. D. KAHN, Bankruptcy Judge.

The above-named affiliated corporate debtors-in-possession operate two restaurants in Atlanta, Georgia. They petitioned the court for relief as provided by Chapter 11 of the Bankruptcy Code on March 31, 1980. Presently pending in these related reorganization proceedings are the following: (1) three adversary matters in which the debtors' landlord, Omni International

Limited, seeks relief from the automatic stays imposed by 11 U.S.C. § 362(a); (2) a motion filed on behalf of secured creditor I.T.T. Industrial Credit Company to condition Mimi's of Atlanta, Inc.'s continued use of encumbered property upon the provision of adequate protection, as contemplated by 11 U.S.C. § 363(e); and (3) an adversary proceeding in which lien-holding International City Corporation has requested relief from the § 362(a) stay.

## I.

### Factual Background

A mall-like facility in downtown Atlanta known as the "Omni" complex is owned and operated by Plaintiff Omni International Limited, a Georgia limited partnership. Two restaurants, "Mimi's" and "Max'," which occupy retail space within the complex, are owned by debtor/Defendant Mimi's of Atlanta, Inc., and debtor/Defendant Max' Restaurant, Inc. The third debtor-in-possession in these related reorganization proceedings, Exeter Restaurant Corporation, holds no proprietary interest in either restaurant, but it is affiliated with the other corporate debtors in that it not only performs accounting and cash-managing services for the two restaurant-operating debtors, but also is owned and controlled by the same individual, Mr. Steven Brown, who is an experienced businessman and certified public accountant.

In 1978, for a period of approximately one year, Mr. Brown was employed by Plaintiff Omni International Limited as President of the Omni complex. In that capacity, he became acquainted with Mr. Max Schnallinger, who, at that time, owned and operated the Mimi's and Max' restaurants. Apparently, Mr. Brown considered the restaurants to be potentially successful business ventures, because, after he resigned his position with Plaintiff Omni, he formed the above-named corporate debtors into which the assets and liabilities of the restaurants were transferred.

As part of the purchase of the restaurants, Mimi's of Atlanta, Inc., and Max' Restaurant, Inc., assumed the lease obligations owed by Mr. Schnallinger, (or business entities owned by him), to Plaintiff Omni. This assumption and assignment of the leasehold occurred in May of 1979, and the two corporations made rental payments as prescribed by the leases through August of that year. Exeter Restaurant Corporation, the money-managing entity, entered into a lease agreement on office space with Plaintiff shortly after the Mimi's and Max' leases had been assigned, and it appears that no rental payments, as provided by that lease, were ever made by Exeter.

Accordingly, on October 31, 1979, Plaintiff Omni notified the three debtors that they would be in default, as defined in the leases, if the October and partial September arrearages were not cured within ten days of receipt of the notices. Since the lessee/debtors failed to cure the arrearages, the landlord/Plaintiff unilaterally terminated the leases on February 6, 1980, as provided in the lease agreements. A letter bearing that date so informed the debtors of the termination. Shortly after the termination, dispossessory proceedings were initiated by the landlord in state court, but before any writs were issued, the proceedings were stayed by the debtors' filing of petitions for reorganization in this court.

The Schnallinger-Brown transaction also involved the assumption by Mimi's of Atlanta, Inc., of debts owed to I.T.T. Industrial Credit Company and International City Corporation. Each of these debts is secured by liens on personalty owned by the debtor, but, since the court has now determined that the fair market value of the collateral is less than the amount of the debt owed to the undisputed first priority secured party, (ITT), neither of these creditors is fully secured in these proceedings.

## II.

### Procedural Background

Within one week of the filing of Chapter 11 petitions by these three debtors, Plaintiff Omni International Limited sought relief from the automatic stay imposed by § 362(a), or, in the alternative, possession of

the premises occupied by the three corporate debtors.[1] The debtors filed a lengthy answer and lodged two counterclaims through which they seek money damages. The court held a preliminary hearing, as contemplated by § 362(e) of the Bankruptcy Code, in order to determine what, if any, immediate relief should be provided.

Since "relief from the stay" is defined to include conditioning the continuance of the stay,[2] immediately following the preliminary hearing the court entered an order which provided for automatic termination of the stay if the debtors-in-possession continued to occupy the premises without making fair rental payments to the landlord/Plaintiff. *Omni International, Ltd. v. Mimi's of Atlanta, Inc.*, Adv.No. 80–0287A (Bankr.Ct.N.D.Ga., order entered April 10, 1980); *Omni International, Ltd. v. Max' Restaurant, Inc.*, Adv.No. 80–0289A (Bankr. Ct.N.D.Ga., order entered April 10, 1980). The terms of those orders have been fully complied with by the Mimi's and Max' debtors, and the stay has, therefore, remained in full force and effect with respect to those two entities. The office space occupied by Exeter, however, has been vacated, thereby mooting that particular debtor's dispute with the landlord.

Secured creditor I.T.T. Industrial Credit Co. has moved the court for adequate protection, and International City Corporation, who holds an undisputed second priority lien on the same property encumbered by I.T.T.'s lien, seeks relief from the automatic stay. It was inappropriate at the time that the preliminary hearing was held to condition or otherwise weaken the stay imposed upon these two secured creditors, since the court had not had the opportunity to value the property encumbered by the creditors' liens. *See* 11 U.S.C. §§ 362(d)(1), 362(d)(2).

In order to address these valuation problems and to consider the unresolved issues arising out of the disputes with the landlord, a final hearing in connection with these matters was commenced within thirty days of the date of the preliminary hearing, as required by § 362(e) of the Code.

### III.

#### Landlord's Causes of Action

The landlord's first cause of action constitutes a "request," as contemplated by § 362(d) of the Bankruptcy Code, for relief from the stay imposed by § 362(a). The landlord's second cause of action, by which it seeks to have the court grant it possession of the premises, may be properly addressed only after the stay-related issues have been resolved.

Prior to considering whether the standards outlined in § 362(d) for relief from stay have been met, the court must first determine what kind of stay, if any, has been imposed upon the party seeking relief. In making such a determination, the court's attention focuses upon § 362(a) of the Bankruptcy Code. That subsection imposes, immediately upon the filing of any type of petition in bankruptcy, an automatic stay, which prevents eight specific types of actions from being taken against the debtor,[3] the debtor's property,[4] or property which passes to the debtor's bankruptcy estate.[5]

Prior to the filing of petitions by these debtors, the landlord was seeking to dispossess the debtors through proceedings instituted in state court. To the extent that the landlord's only non-bankruptcy remedy against the debtors, their property, or property in their bankruptcy estates lies in such a state court dispossessory action, the court is faced only with "relief-from-stay" issues, because the unambiguous language of

---

1. Plaintiff Omni's complaint states, in effect, two causes of action.

2. 11 U.S.C. § 362(d).

3. *See* 11 U.S.C. §§ 362(a)(1), 362(a)(6), 362(a)(7), 362(a)(8).

4. *See* 11 U.S.C. § 362(a)(5).

5. *See* 11 U.S.C. §§ 362(a)(2), 362(a)(3), 362(a)(4).

§ 362(a)(1) [6] imposes a stay against the exercise of such a judicial remedy. To the extent, however, that the landlord holds a remedy against the debtors that does not require the commencement or continuation of judicial process, relief-from-stay issues arise only after it has been determined that one of the § 362(a) stays other than that found in § 362(a)(1) is found to preclude the exercise of such non-judicial remedies.

■ While it is probable that the landlord's only remedy against the debtors is indeed judicial,[7] to the extent that the landlord holds non-judicial remedies, the court is inclined to construe the stay imposed by § 362(a)(3) to prevent the exercise of them. That particular type of § 362(a) stay operates to prevent any entity from acting to obtain possession of "property of the estate," which is defined in § 541(a) of the Code to include "all legal [and] equitable interests of the debtor in property as of the commencement of the case." Since the debtors have continually maintained possession of the premises and have never had an opportunity to refute the landlord's unilateral termination of the lease until the instant stay litigation was commenced, the court hereby finds that each of the debtors had a scintilla of equitable interest in the landlord's premises as of the date the petitions were filed, thereby making the stay imposed by § 362(a)(3) applicable to all attempts by the landlord to gain possession of the premises, whether the attempts require judicial supervision or not. Although the court ultimately concludes herein that the nature of the debtors' estate in the landlord's premises is nothing more than a tenancy at sufferance, such a conclusion does not preclude a finding that an equitable interest exists for purposes of § 541(a)–§ 362(a)(3) analysis.[8]

■ Having determined that a stay is properly in effect to prevent the landlord from acting to deprive the debtors or their estates of possession, the question now becomes whether relief from the stay should be granted. For the reasons outlined below, the court hereby concludes that adequate "cause" exists, as contemplated by § 362(d)(1) of the Code, to lift the stays of § 362(a), on the ground that the debtors-in-possession hold no rights, under § 365 of the Code, to assume any leasehold interests in the landlord's property.[9]

Prior to the adoption of the Bankruptcy Code, the courts took a variety of approaches in deciding whether bankrupts,[10] (or trustees for the benefit of bankruptcy estates), should be able to resurrect the rights they held under leases which were terminated prior to or immediately upon the filing of a petition in bankruptcy.

In some cases, the courts were faced with situations in which the termination was caused solely by the operation of an *ipso facto*, or bankruptcy, clause in the lease agreement. The Bankruptcy Act recognized the validity of these clauses,[11] but the courts frequently refused to enforce them

**6.** ". . . a petition filed under . . . this title operates as a stay, applicable to all entities, of—
(1) the commencement or continuation, including the issuance or employment of process, of a judicial, administrative, or other proceeding against the debtor that was or could have been commenced before the commencement of the case under this title, or to recover a claim against the debtor that arose before the commencement of the case under this title; . . . ."
11 U.S.C. § 362(a)(1).

**7.** *King v. Baker*, 109 Ga.App. 235, 136 S.E.2d 8 (1964).

**8.** For example, in the case of *In re Lane Foods, Inc.*, 213 F.Supp. 133 (S.D.N.Y.1963), the court held that the bankruptcy court maintained its summary jurisdiction over a landlord and the bankrupt-occupied premises, even though the bankrupt had lost its rights to assume the leasehold interest in the premises.

**9.** *See In re GSVC Restaurant Corp.*, 3 B.R. 491 (S.D.N.Y.1980).

**10.** The word "debtor" is used herein to indicate an entity seeking relief under the Bankruptcy Code, and the word "bankrupt" is used to identify those entities which sought relief under the now repealed Bankruptcy Act.

**11.** § 70b, Bankruptcy Act. *See e. g., Finn v. Meighan*, 325 U.S. 300, 65 S.Ct. 1147, 89 L.Ed. 1624 (1945) (Douglas, J.); *In re Hough Mfg. Corp.*, 1 B.R. 69 (Bankr.Ct.W.D.Wis.1979).

on purely equitable grounds.[12] The precedential weight of these decisions, however, is severely eroded by the fact that the Bankruptcy Code makes *ipso facto* clauses invalid, as a matter of law. 11 U.S.C. §§ 365(e), 541(c).

In other Bankruptcy Act cases which involved leases terminated prior to or simultaneously with bankruptcy, the courts occasionally relied upon the same sort of equitable considerations to override terminations caused not by *ipso facto* clauses but by actions taken by the landlord after tenant default as applicable law or the lease agreement provided.[13] Guided by the legal principles discussed below, it is this court's conclusion that the equitable considerations relied upon in such cases should be drawn upon by bankruptcy courts only in rare instances and, furthermore, that the instant proceedings have not been shown to involve such an instance.

Several courts, including the Fifth Circuit Court of Appeals, have recognized that lease agreements terminated prior to bankruptcy for reasons other than the operation of *ipso facto* clauses are not, as a general rule, assumable executory contracts.[14] On the basis of his research of the legislative history behind the new Bankruptcy Code, one commentator has taken the position that this precedent which generally refuses to resurrect terminated agreements was adopted in the new Bankruptcy Code.[15]

When lease agreements have been terminated, they cease to be assumable under § 365 of the Code. Professor Countryman's analysis of executory contracts,[16] which has been discussed and adopted by several courts, supports the conclusion that once future obligations no longer continue, *i. e.*, once the agreement is terminated, there is no executory agreement.[17] Similarly, Professor Williston has stated that: "all contracts are to a greater or less extent executory . . . when they cease to be so, they cease to be contracts." 1 *Williston on Contracts* § 14 (3d ed. 1957). Thus, if there is no agreement because of a termination, there is no executory interest which would make the agreement assumable.

■ The lease agreements at issue in the instant cases have, without question, been validly terminated, thereby causing all executory elements to have evaporated. The parties agreed prior to bankruptcy that the lease agreements could be unilaterally terminated upon the occurrence of certain events. One of those events, which involved the failure to pay rent, has occurred, and the landlord/Plaintiff thereafter did exactly what the leases provided it must do in order to effect a termination. Accordingly, the debtors became, as of the date of termination, (February 6, 1980), tenants-holding-over, and their leasehold interest was reduced to an estate at sufferance. *Morgan v. Maddox*, 216 Ga. 816, 120 S.E.2d 183 (1961); *Jones v. Atlanta Housing Au-*

12. *E. g., Queens Boulevard Wine & Liquor Corp. v. Blum*, 503 F.2d 202 (2d Cir. 1974); *Weaver v. Hutson*, 459 F.2d 741 (4th Cir. 1972), *cert. denied* 409 U.S. 957, 93 S.Ct. 288, 34 L.Ed.2d 227 (1973). *See also Smith v. Hoboken Ry. Co.*, 328 U.S. 123, 132, 66 S.Ct. 947, 952, 90 L.Ed. 1123 (1946) (Douglas, J.).

13. *E. g., In re Fontainebleau Hotel Corp.*, 515 F.2d 913 (5th Cir. 1975); *In re Fleetwood Motel Corp.*, 335 F.2d 863 (3d Cir. 1964); *In re Furniture Warehouse Sales, Inc.*, 2 B.R. 293 (Bankr. Ct.N.D.Ga.1980) (Chapter XI) (Norton, B. J.).

14. *In re Jolly*, 574 F.2d 349 (6th Cir. 1978); *In re Commodity Merchants, Inc.*, 538 F.2d 1260 (7th Cir. 1976); *In re D. H. Overmeyer Co., Inc.*, 510 F.2d 329 (2d Cir. 1975) (limiting the rule of *Queens Boulevard, supra*, to its facts); *In re Schokbeton Industries, Inc.*, 466 F.2d 171 (5th Cir. 1972); *In re Hucknall*, 2 B.R. 382

(Bankr.Ct.W.D.N.Y.1980) (characterizing *D. H. Overmeyer* as the general rule and *Queens Boulevard* as the exception).

15. D. Fogel, *Executory Contracts and Unexpired Leases in the Bankruptcy Code*, 64 Minn. L.Rev. 341, 346 (1980).

16. V. Countryman, *Executory Contracts in Bankruptcy: Part I*, Minn.L.Rev. 439 (1973); V. Countryman, *Executory Contracts in Bankruptcy: Part II*, 58 Minn.L.Rev. 749 (1974).

17. *Jenson v. Continental Financial Corp.*, 591 F.2d 477 (8th Cir. 1979); *In re Jolly*, 574 F.2d 349, 351 (6th Cir. 1978) ("executory contracts involve obligations which continue into the future"); *In re Knutson*, 563 F.2d 916 (8th Cir. 1977).

*thority*, 148 Ga.App. 605, 252 S.E.2d 19 (1979).

As noted above, however, equitable considerations have been relied upon by some courts in some situations to convert terminated and therefore non-executory agreements into assumable contracts. It is this court's position that equity should so contradict discernable legal principle in only rare instances. While the case of *In re Fontainebleau*, 515 F.2d 913 (5th Cir. 1975), may be interpreted to support the proposition that it is within the "equity power," *Id.* at 914, of the district courts[18] to resurrect terminated leases, the *Fontainebleau* court based its conclusion that an assumable agreement existed, to a large extent, on its reading of applicable state law which apparently did not allow leases to be terminated without the intervention of a judicial tribunal. *Id.* at 914. That this court chooses to draw heavily upon applicable state law and established principles regarding executory contracts is, therefore, consistent with the law of this circuit.

Furthermore, it is the court's conclusion that the instant proceedings do not involve equitable considerations which would justify the extraordinary remedy of resurrecting the debtors' validly terminated lease agreements. Throughout the course of dealing between these debtors and their landlord, the debtors were represented by experienced managers and competent counsel. There has been no technical or unconscionable forfeiture of the debtors' rights under the lease agreements. It was simply the debtors' knowing and persistent failure to perform that gave the landlord the termination right which is hereby, for the first time, judicially recognized.

There is, accordingly, no § 365 executory interest available for the debtors-in-possession to assume, and, therefore, sufficient cause exists to lift the automatic stay. *In re GSVC Restaurant Corp.*, 3 B.R. 491 (Bankr.Ct.S.D.N.Y.1980).

The landlord's second cause of action, by which it seeks to obtain possession of the premises, therefore becomes ripe for ruling. If the court were to end its discussion here, having only terminated the stay, the landlord would be forced to re-institute its dispossessory proceeding in state court. The court finds that such a result would cause an unconscionable delay, and would allow the debtors to work an abuse of the judicial process. Thus, the court finds it proper to address the question of possession.

Initially, it should be noted that the court holds jurisdiction over the action for possession, 28 U.S.C. § 1471, and that no grounds to justify abstention have been shown.[19] While the landlord did not remove its state court dispossessory proceeding to this forum as it could have, as provided by 28 U.S.C. § 1478, its alternative prayer for relief in the form of possession, (and the imposition until now of the § 362(a)(1) stay), puts the court in a position similar to that it would have been in had there been a § 1478 removal.

As noted above, the leases in question have been validly terminated as provided by the agreements and applicable state law. Accordingly, the landlord has complied with the requirements of *Ga.Code Ann.* § 61–301 *et seq.* (1979) to give it a right to re-enter the premises. The debtors-in-possession have been given adequate opportunity to respond, as the state statute requires, and the court has found against them. Possession, therefore, lies properly with the landlord, Omni International Limited.

## IV.

### Debtors' Counterclaims

The debtors have lodged two counterclaims against the landlord, and neither is relevant to the action for relief from stay

---

**18.** United States Bankruptcy Courts now hold virtually the same powers of law and equity as those held by United States District Courts at the time *Fontainebleau* was decided. 28 U.S.C. § 1481.

**19.** *See, e. g., In re Kaleidoscope, Inc.*, 3 B.R. 7 (Bankr.Ct.N.D.Ga.1980).

or the action for possession. Both counterclaims seek monetary damages only and, therefore, even if the court were to enter judgment for the debtors exactly as they have prayed, the counterclaims would in no way affect the court's analysis of the relief-from-stay or possession issues.

■ Essentially, the debtors have alleged breach of the lease agreement by the landlord. Such a breach gives rise only to (1) a claim for damages or (2) grounds for constructive eviction. Since constructive eviction simply provides the lessee a basis for terminating a lease unilaterally, (just as non-payment of rent may constitute default and give the landlord such a unilateral termination right), the counterclaims could not possibly constitute a claim of constructive eviction; indeed, the debtors have sought resurrection of the leases. Furthermore, no claim of constructive eviction or abatement of rent may lie in circumstances such as these, wherein the tenant refuses to surrender possession.[20] In sum, the debtors' allegations that the landlord breached the lease agreement gives rise, in this case, only to a claim of damages.

■ Since money damage counterclaims brought by lessees may be heard even after possession has been given to the landlord, *Vlahos v. DeLong*, 132 Ga.App. 722, 724, 209 S.E.2d 12 (1974), and since the court's pre-trial order dated May 2, 1980 did not indicate that the counterclaims would be addressed at trial, further pre-trial will be scheduled in order to consider the counterclaims.

## V.

## Rights of Secured Creditors I.T.T. and I.C.C.

■ Imposed against I.T.T. Industrial Credit Company (I.T.T.) and International City Corporation (I.C.C.) are the stays found in §§ 362(a)(1), 362(a)(3), 362(a)(4), 362(a)(5), and 362(a)(6) of the Bankruptcy Code. It is undisputed that each of these creditors holds a valid lien on virtually identical collateral owned by Mimi's of Atlanta,

Inc. I.C.C. does not dispute I.T.T.'s first priority position.

I.T.T. has not requested that relief from the stay be granted, but only that the debtor's continued use of property encumbered by I.T.T.'s lien be conditioned upon the provision of adequate protection, as contemplated by § 363(e) of the Code. I.C.C., on the other hand, has requested that relief from the stays of § 362(a), as provided by § 362(d), be granted.

Although I.T.T. has not requested the relief contemplated by § 362(d), the court will allow I.C.C., to enforce its lien as a second priority lien holder, thereby granting I.C.C. the relief it has requested. The court considers itself unable to offer § 362(d) relief *sua sponte* to I.T.T., since that subsection begins with the phrase "On request . . . ."

Nonetheless, I.T.T.'s motion is rendered moot by the fact that I.C.C. will be allowed to foreclose on the encumbered property.

In determining whether the § 362(a) stays should be lifted as against I.C.C. the court is guided by § 362(d). Paragraph two of that subsection provides that relief from the stays of § 362(a) shall be given whenever (1) the debtor holds no equity in the property affected by the stay, and (2) the property is not necessary for an effective reorganization. The existence of "equity," as used by § 362(d)(2), is dependent upon a finding that the market value of the property exceeds the debt secured by liens which attach to the property.

At the valuation hearing held by the court in connection with these matters, the debtors' President testified that the value of the encumbered property did not exceed $100,000. It appears to the court, on the basis of other evidence produced at trial, that the $100,000 valuation is accurate. As the debt owed I.T.T. alone exceeds $110,000, the court finds that the debtors hold no equity in the encumbered property. Since the I.C.C. debt is also substantial, it is apparent that the property could not, in the

---

**20.** G. Pindar, *Georgia Real Estate Law* § 11–63 n. 3 (2d ed. 1980).

foreseeable future, give the debtors any equity, even if certain pieces of the property are not losing market value.

The court also finds that the encumbered property is not necessary for an effective reorganization, since the use of this restaurant operation property is essentially limited to the Omni complex premises, possession of which is contemporaneously herewith given to the landlord. The President of the affiliated corporate debtors has indicated that possession of the Omni premises is essential to continuing the businesses in their present form, and the court, after consideration of all the evidence, concludes that this heavily encumbered property would be of no assistance in rehabilitating these debtors once they have been deprived of possession of the Omni premises.

The standard for relief-from-stay, as outlined in § 362(d)(2) of the Code, has, therefore, been satisfied insofar as I.C.C. is concerned, and, therefore, since I.T.T.'s claim is secured by the same property, its motion for adequate protection becomes moot.

In accordance with the above, a consolidated order and judgment regarding each of the above-listed pending matters is contemporaneously entered herewith.