OPINION OF THE COURT
GARTH, Circuit Judge.
At issue in this appeal is the effect of a clause in a lease which provided that the lease would terminate in the event an insolvency proceeding was filed against the tenant. Complicating the issue in this case is the fact that up to October 1, 1979, the provisions of the Bankruptcy Act of 1898, as amended, governed. After that date the provisions of the Bankruptcy Code, 11 U.S.C. §§ 101 et seq. (Supp. Ill 1979), controlled. The triggering event, the filing of an involuntary petition in bankruptcy against the tenant, occurred on August 13, 1979, when the old Act was still in force. *465 Under section 70(b) of the old Act, an express bankruptcy termination clause, or ipso facto clause, such as was contained in the instant lease, was generally enforceable. Under section 365(e)(1) of the Code, such a clause is no longer enforceable.
We are here called upon to determine whether the old Act or the new Code controls where the purported termination of the tenancy occurred prior to October 1, 1979, the effective date of the Code. If the old Act governs because Halvajian had effectively terminated the lease prior to October 1, 1979, then on November 19, 1979, when an interim trustee in bankruptcy was appointed, no leasehold interest existed which the trustee could assume.
The bankruptcy judge held as a matter of law that no effect could be given to the ipso facto clause. He thus did not make findings as to whether Halvajian had validly terminated the lease, and if so, on what date. The district court, adopting a similar approach, held for this and other reasons that the trustee had succeeded to the tenant’s leasehold rights which could be assumed.
We conclude that the bankruptcy termination clause in the lease would be enforceable if the lease was terminated prior to the effective date of the Code, but we also conclude that the determination of whether and when a valid' termination occurred must initially be made by the bankruptcy court. We thus vacate the order of the district court and remand.
I.
The lease between the appellant-landlord, Arthur M. Halvajian, and the debtor, Triangle Laboratories, Inc., covered premises at 316 North 6th Street, Prospect Park, New Jersey, for a term of ten years commencing November 26, 1975. An addendum to the lease granted Triangle an option to purchase the leased premises from Halvajian between December 24, 1975 and March 24, 1981 for $375,000. Among other provisions, the lease contained bankruptcy termination clauses which, in effect, provided that the filing of an involuntary proceeding by or against Triangle constituted an event of default leading to the termination of the lease. The relevant lease clauses are reproduced in the margin.[1]
On August 13, 1979, an involuntary petition in bankruptcy was filed against Triangle. On that date, Halvajian sent Triangle a letter stating that by virtue of the petition filed against it, Triangle was in default under its lease and that the lease would expire on September 5,1979 pursuant to the twenty-day termination provision of paragraph 15(b) of the lease. The petition filed against Triangle subsequently was dismissed on October 19, 1979.[2]
Triangle then, on November 13, 1979, filed a voluntary petition for reorganization under Chapter 11 of the Bankruptcy Code. The Chapter 11 proceedings were converted into a Chapter 7 liquidation bankruptcy on *466 December 21, 1979. After the commencement of these bankruptcy proceedings, appellee Michael S. Kopelman, Triangle’s interim trustee, who had been appointed on November 19, 1979, sought to exercise the purchase option in the lease so the property could be sold by the bankruptcy estate to a prospective purchaser for $480,000, thus realizing a $105,000 profit. On December 27, 1979, Kopelman filed a complaint against Halvajian in the United States Bankruptcy Court for the District of New Jersey, seeking a declaration of his right to specific performance of the purchase option.
Halvajian’s defense was that, as a result of the August 13, 1979 bankruptcy petition against Triangle and Triangle’s alleged default in compliance with the insurance provisions of the lease,[3] the lease had been terminated prior to October 1, 1979, the effective date of the Code, as well as prior to the November 13, 1979 Chapter 11 petition and hence was not part of the succeeding bankruptcy estate.[4] Therefore, Halvajian asserted, there was no longer a purchase option which the Trustee could exercise.
The bankruptcy court rejected Halvajian’s argument. That court, without determining whether and when the lease had been terminated, held that the bankruptcy termination clauses were ineffective under section 365(e)(1) of the Code. The bankruptcy court went on to hold, however, that the lease had been validly terminated for failure to renew the required insurance. Alternatively, the bankruptcy court held that the Trustee had failed properly to assume the lease within the sixty-day period prescribed by section 365(d)(1) of the Bankruptcy Code, 11 U.S.C. § 365(d)(1) (Supp. III 1979), and that hence the lease had been rejected by the Trustee as a matter of law. In re Triangle Laboratories, Inc., No. 79-0030 (Bankr.Ct.D.N.J. May 5, 1980). The bankruptcy court thus dismissed the Trustee’s complaint on May 21, 1980.
On appeal to the district court, Halvajian and the Trustee stipulated that the lease had been properly assumed. The district court, without questioning the effectiveness of that stipulation, held that the lease had not been terminated under either the bankruptcy or the insurance clauses, and thus vacated the order of the bankruptcy court, thereby ruling in favor of the Trustee. In re Triangle Laboratories, Inc., No. 80-1672 (D.N.J. Dec. 8, 1980). Halvajian’s appeal followed.
II.
Until the enactment of the Bankruptcy Reform Act of 1978, the Bankruptcy Act of 1898, as amended, governed federal insolvency proceedings. Effective October 1, 1979, the Bankruptcy Code, 11 U.S.C. §§ 101 et seq. (Supp. Ill 1979), superseded the old Act. Under section 70(b) of the old Act, express bankruptcy termination clauses in a lease were permitted and enforced: “[A]n express covenant that an assignment by operation of law or the bankruptcy of a specified party thereto or of either party shall terminate the lease or give the other party an election to terminate the same is enforceable.” Act of June 22, 1938, ch. 575, § 70(b), 52 Stat. 881 (repealed 1978).[5] Section 365(e)(1) of the new Code, however, renders such clauses unenforceable:
Notwithstanding a provision in an ex-ecutory contract or unexpired lease, or in applicable law, an executory contract or unexpired lease of the debtor may not be terminated or modified, and any right or *467 obligation under such contract or lease may not be terminated or modified, at any time after the commencement of the case solely because of a provision in such contract or lease that is conditioned on—
(A) the insolvency or financial condition of the debtor at any time before the closing of the case;
(B) the commencement of a case under this title; or
(C) the appointment of or taking possession by a trustee in a case under this title or a custodian before such commencement.
11 U.S.C. § 365(e)(1) (Supp. Ill 1979).
The focus in this case must therefore be directed to two questions: (1) whether the August 13, 1979 involuntary petition could legally give rise to an event of default; i. e., whether the bankruptcy termination clause in the lease was enforceable; and (2) if it was, whether Halvajian validly terminated the lease as of September 5, 1979 by his termination letter of August 13, 1979. We can answer the first of these questions, but we are obliged to remand to the bankruptcy court for the resolution of the second.
III.
A.
Since Triangle’s Chapter 11 proceedings were commenced on November 13, 1979, after the effective date of the Code, we must initially look to the Code’s provisions on bankruptcy termination clauses to determine whether the earlier (August 13, 1979) involuntary petition filed against Triangle precluded the Trustee from acquiring any lease interest which he could assume. The relevant provision of the Code, section 365(e)(1), generally invalidates bankruptcy termination clauses. Although section 365(e)(1) applies to unexpired leases which were entered into prior to the effective date of the Code, see District Court opinion, App. at 102a n.7; In re Lafayette Radio Elecs. Corp., 7 B.R. 189 (Bkrtcy., E.D.N.Y.1980); In re Southeastern Truck Body & Trailer Corp., 6 B.R. 730 (D.C.E.D.Tenn.1980); In re Sapolin Paints, Inc., 5 B.R. 412, 417 (Bkrtcy., E.D.N.Y.1980), that section cannot resolve the issue with which we are confronted, since Halvajian argues that, by virtue of the involuntary petition filed against Triangle and the notice of termination given on that same day, Triangle’s lease had expired prior to October 1, 1979, the Code’s effective date. The instant proceeding is thus unlike Lafayette, Southeastern Truck, and Sapolin Paints. In those cases, while the leases were executed prior to the effective date of the Code, the event which triggered the bankruptcy termination clause occurred after the effective date of the Code. The provisions of section 365(e)(1) thus controlled those cases because each involved leases that were “unexpired” as of the effective date of the Code.
Since the events allegedly triggering termination here all occurred prior to October 1, 1979, their legal effect would necessarily be determined according to the law then in effect: the Bankruptcy Act. If, under the Act, the lease terminated on August 13, 1979 or September 5, 1979, then there could be no “unexpired lease” to which section 365(e)(1) of the Code could apply when Triangle filed its November 13, 1979 Chapter 11 proceeding. As one authority has stated, “[F]or Section 365 to apply, the contract or lease must be in existence. If the contract or lease has expired by its own terms or has been terminated prior to the commencement of the bankruptcy case, then there is nothing left for the trustee to assume or assign.” 2 Collier on Bankruptcy 1365.02 at 365-13 (15th ed. 1981). See In re Hospitality Assocs., Inc., 6 B.R. 778, 780 (Bkrtcy., D.Or.1980); cf. In re Jolly, 574 F.2d 349, 351 (6th Cir.), cert. denied, 439 U.S. 929, 99 S.Ct. 316, 58 L.Ed.2d 322 (1978) (when contract has been breached and damage judgment obtained, contract is no longer “executory” under the Act).
This interpretation of section 365(e)(1) is consistent with the recognized principle of bankruptcy law that an executory contract or lease validly terminated prior to the institution of bankruptcy proceedings is not resurrected by the filing of *468 the petition in bankruptcy, and cannot therefore be included among the debtor’s assets. See In re Commodity Merchants, Inc., 538 F.2d 1260, 1263 (7th Cir. 1976); In re GSVC Restaurant Corp., 10 B.R. 300, 302 (D.C.S.D.N.Y.1980); In re Youngs, 7 B.R. 69, 71 (Bkrtcy., D.Mass.1980); In re Mimi’s of Atlanta, Inc., 5 B.R. 623, 627-29 (Bkrtcy., N.D.Ga.1980), aff’d and remanded, 11 B.R. 710 (D.C.N.D.Ga.1981); In re Bronx-Westchester Mack Corp., 4 B.R. 730, 731 (Bkrtcy., S.D.N.Y.1980); Fogel, Executory Contracts and Unexpired Leases in the Bankruptcy Code, 64 Minn.L.Rev. 341, 346 (1980). As the court observed in In re Butchman, 4 B.R. 379, 381 (Bkrtcy., S.D.N.Y.1980), “When a debtor’s legal and equitable interests in property are terminated pri- or to the filing of the petition with the Bankruptcy Court that was intended to preserve the debtor’s interest in such property, the Bankruptcy Court cannot then cultivate rights where none can grow.” See also Bank of Marin v. England, 385 U.S. 99, 101, 87 S.Ct. 274, 276, 17 L.Ed.2d 197 (1966) (“[t]he trustee succeeds only to such rights as the bankrupt possessed”).
B.
Thus, the bankruptcy termination clauses in paragraph 15 of Triangle’s lease, see note 1 supra, must be examined in light of section 70(b) of the Act. As noted above, under section 70(b), express bankruptcy termination clauses, such as the one contained in paragraph 15(a)(4) of Triangle’s lease, were enforceable.
In Finn v. Meighan, 325 U.S. 300, 65 S.Ct. 1147, 89 L.Ed. 1624 (1945), the landlord, relying on a bankruptcy termination clause in its lease with the debtor, claimed that the lease had terminated by virtue of the debtor’s having filed a voluntary petition for reorganization under Chapter X of the Bankruptcy Act. The Supreme Court rejected the trustee’s argument that section 70(b) was inapplicable to reorganizations, stating, “[W]e must read § 70(b) as providing that an express covenant is enforceable which allows the lessor to terminate the lease if a petition to reorganize the lessee under Ch. X is approved. . . . That being the policy adopted by Congress, our duty is to enforce it.” Id. at 303, 65 S.Ct. at 1149 (citation omitted). The Court, after construing ambiguous language in the bankruptcy termination clause, held that that provision permitted the landlord to recover the premises.
Finn acknowledged that forfeiture clauses in leases are not looked upon with favor by bankruptcy courts. Such clauses are liberally construed in favor of the debt- or-lessee so that the estate is not deprived of a valuable asset. Id. at 301, 65 S.Ct. at 1148. However, whether in straight bankruptcy, Chapter X reorganizations, or Chapter XI arrangements, where the termination provisions of a lease are unambiguous and clearly expressed, they will be given effect, unless doing so would contravene the purposes of the Bankruptcy Act. See id. at 302, 65 S.Ct. at 1149. Here, the provisions of Triangle’s lease were clear and unambiguous. Paragraph 15(a)(3) of the lease provided for termination on the filing of a petition by Triangle; paragraph 15(a)(4) provided for termination on the filing of a petition against Triangle. To the extent that the termination clause in the present case is explicit and free from doubt as to its meaning, there would appear to be no basis for denying it effect.
The year after Finn, the Supreme Court in Smith v. Hoboken R. R., Warehouse & S. S. Connecting Co., 328 U.S. 123, 66 S.Ct. 947, 90 L.Ed. 1123 (1946), again addressed the question of the enforceability of bankruptcy termination clauses under section 70(b) in the context of a railroad reorganization under section 77 of the Bankruptcy Act. Although the Smith Court found “no provision in § 77 which suggests that Congress intended to make [section 70(b)] inapplicable in [the] case of railroad reorganizations,” id. at 128, 66 S.Ct. at 951, it nonetheless declined to enforce the comprehensive bankruptcy termination clause in the debt- or’s lease. The Court observed that the public’s interest in the operation of the railroad required initial consideration by the Interstate Commerce Commission and that *469 because it was the Commission’s function to prepare a plan of reorganization compatible with the public interest, the district court had erred in declaring the lease forfeit. The Court also stressed that forfeiture of the lease would deprive the railroad of all its properties and that no plan of reorganization would then be possible. Id. at 131— 32, 66 S.Ct. at 952. Even in that situation, however, the Court declared that the Commission could nevertheless permit the forfeiture of the lease under section 70(b) if it concluded that the forfeiture served the public interest.
The two predominant considerations which led to the Smith Court’s conclusion that forfeiture was inappropriate — the presence of a public interest and the frustration of a plan of reorganization in the event the lessor was permitted to remove the key asset from the estate — were later refined by lower courts in their development of an equitable doctrine under which courts could, in appropriate circumstances, deny effect to bankruptcy termination clauses otherwise enforceable under section 70(b). See, e. g., In re Huntington Ltd., 654 F.2d 578 (9th Cir. 1981) (granting forfeiture would provide lessor with unconscionable windfall particularly where no prejudice to lessor would occur and rental payments had continued throughout all insolvency proceedings); In re Fontainebleau Hotel Corp., 515 F.2d 913 (5th Cir. 1975) (forfeiture of lease would make reorganization impossible); Queens Boulevard Wine & Liquor Corp. v. Blum, 503 F.2d 202 (2d Cir. 1974) (enforcement of forfeiture would destroy a profitable debtor by depriving it of its most valuable asset); Weaver v. Hutson, 459 F.2d 741 (4th Cir.) (forfeiture would cause complete loss to debtor’s creditors, stockholders, and debenture holders, and would defeat the debtor’s reorganization), cert. denied, 409 U.S. 957, 93 S.Ct. 288, 34 L.Ed.2d 227 (1972); In re Fleetwood Motel Corp., 335 F.2d 857 (3d Cir. 1964) (forfeiture would thwart reorganization of debtor, in which public had invested more than $500,000); In re M & M Transp. Co., 437 F.Supp. 821 (S.D.N.Y.1977) (termination of lease would preclude successful arrangement under Chapter XI); In re Delta Motor Hotel of Syracuse, Inc., 10 B.R. 585 (Bkrtcy., N.D.N. Y.1981) (forfeiture would deprive debtor of primary asset required for reorganization and would unconscionably afford lessor windfall gain). In each of these cases, the circumstances were such that if effect were given to a section 70(b) termination, the debtor’s estate would be deprived of the essential res to effect reorganization, and thus the purposes of the Act would be frustrated and the reorganization of the debtor thwarted.
An illuminating example of this approach is found in this court’s decision in Fleet-wood Motel, supra. Fleetwood Motel had entered into a 99-year lease for premises on the Boardwalk in Atlantic City, New Jersey, where it ultimately constructed a 6-sto-ry, 129-room motel with stores, facilities, and a swimming pool at a cost exceeding $1,250,000. In addition, furniture and fixtures were installed at a cost in excess of $275,000. In order to finance its activities, Fleetwood had sold more than $500,000 worth of stock and debentures to the public. Two years after the lease was signed, Fleet-wood instituted Chapter X proceedings. The landlord sought to terminate the lease pursuant to its ipso facto clause. The bankruptcy court, citing Smith, supra, reasoned that
forfeiture of the lease would entitle the landlord to not only the premises but the motel and the other improvements and furnishings despite the fact that .. . the landlord in preparing the lease acknowledged that a very substantial public investment in the debtor corporation was contemplated as a means of partially financing the enterprise.
335 F.2d at 861. The district court, in affirming the denial of forfeiture, stressed that repossession would be unconscionable, particularly where the Securities and Exchange Commission was supervising the rights of the stockholders. This court held that the investment by the public in the debtor of more than $500,000 and the fact that the motel was the only property of the debtor and without it, no plan of reorganization could be formulated “amply warranted the exercise of the equitable power of the bankruptcy court to deny the landlord’s *470 petition for possession of the premises.” Id. at 862.
In Huntington, supra, and Delta Motor Hotel, supra, as in Fleetwood Motel, the debtor had made valuable improvements to the property and forfeiture would have resulted in a substantial windfall to the landlord. In Queens Boulevard, supra, the majority, although recognizing that no public interest inhered in the operations of the debtor, a liquor store, nevertheless held that reorganization would be precluded if the debtor was deprived of its most valuable asset, its location.
The considerations which prompted the courts in the above-referenced cases to deny enforcement of bankruptcy termination clauses on equitable grounds are not present in this case.[6] Most important, termination of the Triangle lease in accordance with its express terms would not frustrate any reorganization of Triangle since the Chapter 11 proceedings were converted to a Chapter 7 liquidation case on December 21, 1979. The Trustee does not intend to retain Triangle’s premises nor to continue Triangle’s business. Rather, he desires only to exercise a contractual right under Triangle’s purchase option to sell the leased premises to a third party and then to liquidate the estate. Thus, the Trustee’s position here with respect to “equitable” considerations differs greatly from the positions of trustees in cases where bankruptcy termination clauses were denied effect so that the debtor’s business could continue.
In addition, the record does not disclose, nor is it claimed, that Triangle had made any substantial improvements to the premises that would constitute a windfall to the landlord. Neither does the record reveal any public interest which could in any way be equated to the public interest protected in Fleetwood Motel and the other cases denying forfeiture on equitable grounds.
As we read the district court’s opinion, it appears that the most important equitable consideration upon which that court relied in its ruling against Halvajian was that “Halvajian’s attempt to terminate the lease on the mere filing of [the August 13, 1979] involuntary petition in bankruptcy against Triangle [was] inherently unfair in view of the fact that the petition was dismissed two months later.” District Court opinion, App. at 107a.[7] Unlike the district court, we do not believe that the later dismissal of the involuntary petition filed against Triangle renders unfair the termination of the lease as a result of that petition. In this case, Triangle was not unfairly branded a bankrupt and deprived of its rights under its lease as a result of the filing of the short-lived involuntary petition, since less than one month after the dismissal Triangle itself voluntarily filed for Chapter 11 relief. Thus, whatever inequity may inhere in enforcing a bankruptcy termination clause where a petition was wrongfully brought against a solvent business, the same unfairness does not exist when the terminated tenant was indeed bankrupt.
C.
Absent the compelling equitable factors which we have noted, courts have enforced *471 pre-Code bankruptcy termination clauses under section 70(b). See, e. g., In re D. H. Overmyer Co., 510 F.2d 329, 332 (2d Cir. 1975) (“unlike the debtor in Queens Boulevard, Overmyer had presented no feasible plan for an arrangement with any reasonable chance of success”); In re Hucknall, 2 B.R. 382 (Bkrtcy., W.D.N.Y.1980) (termination allowed despite extensive renovation of leased premises by debtor where reorganization plan not capable of performance); In re Hough Mfg. Corp., 1 B.R. 69, 74 (Bkrtcy., W.D.Wis.1979) (“[T]here has been no substantial showing that termination of the leases will frustrate the reorganization of Hough.... Absent such a showing, the clear meaning of § 70b . . . ought not be avoided.”). See also In re Gilchrist Co., [1976] Bankr.L.Rep. (CCH) 166,108 (E.D.Pa. Sept. 23, 1976); In re D. H. Overmyer Co. (Texas), 12 B.R. 777 (Bkrtcy., S.D.N.Y. 1981).
Since, as we have observed above, there are no compelling reasons in this case why the bankruptcy termination clauses of the lease should not be given their express effect under section 70(b) of the Act, we conclude that the filing of the August 13, 1979 petition against Triangle constituted an event of default under the lease.
IV.
As to the second question posed in this case — whether Halvajian validly terminated the lease by his termination letter of August 13, 1979 — it would appear that the letter, advising Triangle that under section 15(b) of the lease, Triangle’s lease would expire on September 5, 1979, was effective under New Jersey law to terminate the lease. See Donmart Motors, Inc. v. Public Serv. Elec. & Gas Co., 27 N.J.Super. 427, 99 A.2d 534 (1953). See also Xerox Corp. v. Listmark Computer Sys., 142 N.J.Super. 232, 361 A.2d 81 (1976). Cf. Fontainebleau Hotel, supra, 515 F.2d at 914 (under state law, court order required to terminate lease); In re Acorn Investments, 8 B.R. 506, 509 (Bkrtcy., S.D.Cal.1981) (similar). However, the determination of whether Halvajian did indeed validly terminate the lease prior to October 1,1979 is a factual question committed initially to the bankruptcy court. See Huntington, supra, 654 F.2d at 582-83; Overmyer, supra, 510 F.2d at 333.
Here, the bankruptcy court made no findings as to whether Halvajian had validly terminated the lease because of that court’s view that any termination predicated on a bankruptcy termination clause would in any event be unenforceable as a matter of law under section 365(e)(1) of the Code. Because, as we have discussed above, section 70(b) would govern and the bankruptcy termination clause would be enforceable if Halvajian terminated the lease before the effective date of the Code, we are obliged to remand the case to the bankruptcy court for a factual determination as to whether Halvajian had succeeded in terminating the lease, and if so, when. If the bankruptcy court finds that Halvajian validly terminated the lease on September 5, 1979, prior to the effective date of the new Code, then there remained no leasehold estate for the Trustee to assume. Hence, the specific performance of the lease’s purchase option which the Trustee sought, must then be denied.
V.
Accordingly, we will vacate the order of the district court and remand the case to the district court so that it in turn may remand to the bankruptcy court for further proceedings consistent with this opinion.[8]

. Paragraph 15 of the lease provided as follows:
(a) The occurrence of any of the following shall constitute an event of default:
^ sfc *
(3) Filing by the Tenant in any court pursuant to any statute, either of the United States or any state, of a petition in bankruptcy or insolvency, or for reorganization or for the appointment of a receiver or trustee of all or a portion of the Tenant’s property, or an assignment by the Tenant for the benefit of creditors.
(4) Filing against the Tenant in any court pursuant to any statute, either of the United States or of any state, of a petition in bankruptcy or insolvency, or for reorganization, or for the appointment of a receiver or trustee of all or a portion of the Tenant’s property, or an assignment by the Tenant for the benefit of creditors.
(b) Upon the occurrence of an event of default, the Landlord at any time thereafter may give written notice to the Tenant specifying such event of default and stating that this Lease shall expire on the date specified in such notice, which shall be at least 20 days after the giving of such notice, and upon the date specified in such notice this Lease and all rights of the Tenant hereunder shall terminate.
App. at 1 Oa- 11a.

. The petition was dismissed because of the petitioning creditors’ failure to timely amend their petition to allege the facts constituting the act of bankruptcy with sufficient particularity, as required by Fed.R.Bankr.P. 104(c).

. On August 18, 1979, Halvajian sent Triangle a second letter, citing Triangle’s failure to comply with lease provisions regarding renewal insurance, and stating that as a consequence the lease would expire on September 10, 1979.

. The commencement of a bankruptcy case creates an estate consisting, inter alia, of all legal or equitable interests of the debtor in property as of the date of the filing of the petition. 11 U.S.C. § 541(a)(1) (Supp. Ill 1979). Here, the petition for reorganization was filed on November 13, 1979.

. This section has been interpreted to permit terminations triggered by the filing of petitions in bankruptcy by or against a party as well as by the actual bankruptcy of that party. See In re Sound, 171 F.2d 253, 254 (7th Cir. 1948), cert. denied, 336 U.S. 962, 69 S.Ct. 892, 93 L.Ed. 1114 (1949).

. We observe that, as in Queens Boulevard Wine & Liquor Corp. v. Blum, 503 F.2d 202 (2d Cir. 1974), Halvajian in the present case holds a sizeable security deposit in the amount of $15,-000, equal to about four months’ rent. App. at 3a, 18a. That deposit was made upon the execution of Triangle’s lease “for the full and faithful performance by Tenant of all of the terms and conditions upon Tenant’s part to be performed.” Lease (1 28, App. at 18a. The instant record does not disclose what has happened to the security deposit, nor does it disclose any proceedings that have occurred in bankruptcy as they may concern these funds. On the facts of this case, we do not regard the presence of this security deposit as determinative in any way of the rights of Halvajian or the Trustee. Cf. Queens Boulevard, supra, 503 F.2d at 206. The disposition of those funds is a matter to be considered by the bankruptcy court in the first instance when, by virtue of our disposition, the matter is returned to that court for further proceedings.

. The district court also noted that Halvajian would not be prejudiced by nonenforcement of the bankruptcy termination clause and would obtain a windfall if the lease were forfeited. App. at 107a. Those considerations, while important, are insufficient to override the provisions of § 70(b) where no successful reorganization of the debtor is contemplated.

. In light of our disposition, we do not reach and thus do not decide whether the lease was properly terminated for failure of the tenant to pay insurance premiums under the insurance provisions of the lease or whether effect could be given to the parties’ stipulation that the Trustee had properly moved to assume the lease.