**In the Matter of FONTAINE JANITORIAL SUPPLY & SERVICE, INC., Debtor.**

**Edouard N. FONTAINE and Rita T. Fontaine, his wife, Plaintiffs,**

**v.**

**FONTAINE JANITORIAL SUPPLY & SERVICE, INC., Defendant.**

**Bankruptcy No. 81–1550.**
**Adv. No. 81–0361.**

United States Bankruptcy Court,
M. D. Florida,
Tampa Division.

Jan. 29, 1982.

John Russell, Homossassa Springs, Fla., and Robert T. Hughes, Tampa, Fla., for plaintiffs.

Harley Riedel, Tampa, Fla., for defendant.

## FINDINGS OF FACT, CONCLUSIONS OF LAW AND MEMORANDUM OPINION

ALEXANDER L. PASKAY, Chief Judge.

THIS IS a business reorganization case and the matter in controversy is the right of Edouard Fontaine and his wife, Rita T. Fontaine, to obtain a declaration that a certain lease is terminated, and therefore they have the right to evict from the premises covered by the lease, Fontaine Janitorial Supply & Service, Inc., the Debtor involved in the above-captioned proceeding. The facts relevant and germane to the resolution of this controversy, as established at the final evidentiary hearing by documentary evidence introduced into evidence and through testimony of witnesses, can be briefly summarized as follows:

Sometime in 1978, James Marenus purchased all the tangible assets of a corporation known as Fontaine Janitorial Supply, a Florida corporation. Although it is not in evidence, it appears that as part of this purchase agreement, the corporate seller, or its principal, Edouard N. Fontaine, leased the business premises to Mr. Marenus where the assets were located. This lease included an option to purchase the building. It does not appear from this record what the specific terms of this option were. It is clear, however, that by July, 1980, the parties apparently finalized their agreement and executed a new lease dated July 18, 1980, whereby Edouard N. Fontaine and Rita T. Fontaine, his wife, leased the business premises to Fontaine Janitorial Supply & Service, Inc., the Debtor corporation formed by Mr. Marenus, located at 5408 E. Broadway, Tampa, Florida. The lease called for a monthly payment of $1,200 for the first year, $1,400 for the second year and $1,500 for the last year of the lease. This lease contained a specific option to purchase the property for the total sum of $125,000 during the first year of the lease, and during the remainder of the lease, for the sum of $165,000. Whether or not the rent for the month of February, 1981 was paid is in dispute. The Debtor claims it was paid in cash but did not produce a receipt. He also indicated that there were witnesses present when the rent was paid but there were no witnesses called to corroborate the claim of payment. It is without dispute, however, that the rent was not paid for the months of April, May or June and the fact of the matter is, no monthly payment has been made to date.

On April 8, 1981, Mr. and Mrs. Fontaine filed a suit in the Circuit Court for the Thirteenth Judicial Circuit of Florida in and for Hillsborough County and sought a money judgment for the delinquent rent, a declaration that the lease was in default and also sought an order removing the Debtor from the premises. Sometime in June of 1981, while the state court action was still pending, the then-counsel for the Debtor informed counsel for the Plaintiffs that the Debtor corporation was willing to exercise the option by the following Tuesday. This offer to exercise the option was not accompanied by any tender of funds nor any offer to place in escrow any monies necessary to exercise the option although the president of the Debtor claims he would have been in a position to proceed to closing, having

obtained the funds necessary to close from relatives.

On August 25, 1981, the Debtor filed a petition for relief under Chapter 11 which, of course, stopped any further proceeding in the pending state court action by virtue of the automatic stay imposed by § 362. On September 8, 1981, Mr. and Mrs. Fontaine filed a complaint and sought a modification of the automatic stay in order to complete the state court action. On August 26, 1981, or prior to the filing of the complaint seeking relief from the automatic stay, the Debtor filed an application for removal of the state court action pursuant to Local Rule 7004. On October 23, 1981, Mr. and Mrs. Fontaine filed a Motion to Remand. While no formal order has been entered, it appears that it was agreed that the state court action would be tried in this Court inasmuch as the Plaintiffs voluntarily dismissed their complaint which sought modification of the automatic stay.

It is the contention of the Plaintiffs that the lease was effectively terminated prior to the commencement of the Chapter 11 proceeding; thus there was no longer any executory contract which the Debtor could assume. They further contend that the termination of the lease also terminated the option to purchase and therefore, since the Debtor is admittedly in serious default, they are entitled to an order of eviction. In defense, the Debtor contends that the Plaintiffs are not entitled to any order of eviction because they failed to give a three day written notice as required by Fla.Stat. § 83.20(2) (Supp.1981); that they made a tender to purchase by offering to exercise the offer prior to the expiration of the first option year and that in any event, the lease gave the landlord two options: one, to enter and re-let the premises on behalf of the tenant or, in the alternative, to cancel the lease and sue for damages, and since they failed to do either, the lease is still viable and so is the option to purchase. Therefore, it is contended that the Debtor is entitled to complete the purchase of the premises. In addition, the Debtor states that it is in a position to cure all past defaults and pay the required down payment, 29% of the total purchase price, within one month.

In response to this contention, the Plaintiffs contend that the three day written notice requirement is not applicable because the notice requirement applies only to a summary distress proceeding and this is not such a proceeding; moreover, even if it is applicable, filing a suit for eviction was equivalent to a legal notice and in any event, the default under the lease terminated the entire contract including the option prior to the commencement of the bankruptcy case.

The relevant portion of the lease provides, in ¶ 5, that in the event of default under any terms of the lease shall, at the option of the lessor, work as a forfeiture of the lessor's contract and all of the rights of the lessee and the lessor has a right to enter the premises. In addition, ¶ 6 of the lease provides that if the lessee is in arrears in the rent, the lessor has the option either to cancel the lease or enter the premises and re-let the premises. The lease was prepared on a printed business form and any additions thereto were made by counsel for the landlord.

The three day notice requirement mentioned earlier, is set forth in Fla.Stat. § 83.20(2) (Supp.1981) and deals with a summary eviction proceeding by the landlord. The complaint filed in state court was a formal ordinary civil action which sought a declaration that the lease was terminated and also sought eviction but not under the summary procedure ordinarily available to landlords by filing an action for distress for rent. Therefore, it is evident and this Court is satisfied that the three day notice requirement has no relevance to the present controversy. Furthermore, in ¶ 5 of the lease, the lessee expressly waived any and all notice of termination of the tenancy. Such lease provisions take precedence over the statute. *Moskos v. Hand*, 247 So.2d 795 (Fla. 4th D.C.A. 1971). In any event, there is no question that the purpose of a three day notice requirement was to enable a tenant to cure a default in order to avoid eviction. From this it follows that filing a

lawsuit seeking a declaration that the lease is terminated and that the landlord is entitled to an eviction is more than sufficient to fulfill the notice requirement even if it would be applicable in the present instance.

■ This leaves for consideration the question of whether or not the lease was effectively cancelled and if so, did the option provision, in spite of the fact that the lease terminated, survive and still could be exercised. The plain reading of the lease leaves no doubt that a non-payment of rent when due was a specific event of default and by virtue of ¶ 5 of the lease, operated as a forfeiture of all rights flowing from the lease.

■ Having concluded that the Debtor forfeited all of its rights flowing from the lease involved in this controversy, this leaves for consideration the question of whether or not the option to purchase provision of the lease survives or if the right to exercise the same also died with the demise of the lease. This question can only be resolved, of course, with a determination that this provision of the lease was an independent and severable covenant of the lease to the extent that it had its own rights of enforceability separate and apart from the enforceability of the rights flowing from the lease. The option to purchase provided, as noted earlier, that the Debtor/tenant had the right to purchase the property in question prior to the expiration of the first year of the lease for the sum of $125,000. The option further provided that he had the continuing right to exercise the option and purchase the property during the life of the lease, i.e. prior to the expiration of the full term of the lease, i.e. three years from the date of the commencement, albeit for a higher price. It is inconceivable that anyone would grant an option to purchase an apparently valuable real estate, give the tenant use of the premises for three years without the requirement of paying any rent during the use and occupancy, tie up the property for three years, (during which the tenant, under the theory advanced by the Debtor, could use the property) and then, just before the expiration of the lease,

based on the market condition, decide to exercise its option by simply curing the delinquency in the payments of the rent by paying the same at the inflated rate and then purchase the property at the price frozen by the option agreement three years earlier. This could not have been and there is nothing in this record which would substantiate that this was, in fact, the intention of the parties.

■ From the foregoing, it follows, and this Court is satisfied, that the option to purchase provision of the lease had no independent existence and could not and did not survive the demise of the lease. Therefore, there is no longer an unexpired lease having a character of an executory contract which could be assumed by the Debtor under the applicable provisions of the Code, nor are there any remaining rights under the provision of the lease dealing with the option to purchase the subject property. The Debtor's rights under the lease, including the option to purchase and any rights thereunder, evaporated upon the default by the specific terms of the contract. Those rights could not be revived or recondensed merely by filing the petition in bankruptcy, since a contractual termination provision is unaffected by the filing and may be enforced against a trustee or debtor in possession. *See, Schokbeton Industries, Inc. v. Schokbeton Products Corp.*, 466 F.2d 171 (5th Cir. 1972). Accordingly, even though § 365(b) of the Code provides for the assumption of executory contracts, it cannot come into play in a situation where, as here, there is nothing left to assume.

In light of the foregoing, this Court is satisfied that the Plaintiffs are entitled to the relief they seek.

A separate final judgment will be rendered in accordance with the foregoing.