In re MJK, INC., d/b/a Lory's Landing, Debtor.

Baird R. & Geraldine E. TEWKSBURY, Plaintiffs,

v.

MJK, INC., d/b/a Lory's Landing, Defendant.

Bankruptcy No. 81–01889–BKC–TCB.
Adv. No. 82–0011–BKC–TCB–A.

United States Bankruptcy Court, S. D. Florida.

Feb. 5, 1982.

Margaret Cangilos, Miami, Fla., for defendant.

Barbara Phillips, Miami, Fla., for plaintiffs.

Christine Hall Larson, Fort Lauderdale, Fla., for Atlantic Federal S & L Assn.

## MEMORANDUM
## DECISION—TERMINATION

THOMAS C. BRITTON, Bankruptcy Judge.

This chapter 11 debtor-in-possession is being sued by its landlords, who seek a determination that the lease was already terminated before bankruptcy (Count II), or, alternatively, that the stay should be lifted under 11 U.S.C. § 362(d) (Count I) or that the debtor should be required to either accept or reject the lease under § 365(d)(2) (Count III). (C. P. No. 1). The debtor has answered. (C. P. No. 4). The matter was tried on February 2 at which time it was agreed that the threshold question of termination should be resolved before trial of the issues under Count I.

The debtor has announced its willingness to resume all payments due its landlords, mortgagee, and another lienholder now (commencing with all payments due in February) and to cure all defaults on or before May 1 by which time it will file its plan.

This is a 99 year lease executed in 1977. The debtor built a restaurant on the property using funds borrowed from a bank and secured by a mortgage. The landlords agreed to subordinate their rights to those of the mortgagee. The tenant is obliged to pay $1,250 a month, plus eight percent of its gross receipts, plus all payments due under the mortgage.

The landlords attempted to terminate the lease in accordance with its provisions on account of the tenant's alleged failure to keep the mortgage payments current. They rely on § 21(a)(3) of the lease, which provides:

"(a) In the event any one or more of the following events shall have occurred and shall not have been remedied as hereinafter provided . . . (3) Tenant's failure to perform any of the other covenants, conditions, and agreements herein contained on Tenant's part to be kept or performed and the continuance of such failure without the curing of same for a period of

thirty (30) days after receipt by Tenant of notice in writing from Landlord specifying the nature of such failure and provided Tenant shall not cure said failure as provided in subsection (b) of this Section 21, then, Landlord, may, at its option, give to Tenant a notice of election to end the term of this lease upon a date specified in such notice, which date shall be not less than ten (10) business days (Saturdays, Sundays, and legal holidays excluded) after the date of receipt by Tenant of such notice from Landlord, and upon the date specified in said notice, the term and estate hereby vested in Tenant shall cease . . ."

■ Under Florida law, which is controlling in this instance, a contractual forfeiture provision like § 21(a)(3) of this lease, is enforceable. It is not affected by the statutory remedies, which are deemed waived by the stipulated contractual remedy. *Hunt v. Hiland*, Fla.App.1979, 366 So.2d 42, 44; 20 *Fla.Jur.*, Landlord and Tenant, §§ 131–133. However, such forfeiture clauses are viewed with disfavor and, therefore, are to be strictly construed against the party seeking to invoke them. *Texas Co. v. Pensacola Maritime Corp.*, 5 Cir. 1922, 279 F. 19, 26; *Waits v. Orange Creek Turpentine Corp.*, 1936, 123 Fla. 31, 166 So. 449.

■ The clause in this lease requires two written notices, the first, "specifying the nature of such failure", and the second, exercising the election to terminate the lease by specifying the date of termination. The landlords did neither in this case.

They rely on two letters which are dated September 14 (received September 15) and October 9, 1981, (received October 15) (Exhibits E and F). The first letter refers to a letter from the bank which is not attached "indicating that you are in arrears" and tells the tenant to cure that default within 30 days. The letter does not actually charge that any default exists on the day it was written nor does it specify the amount required to cure that default. The precise amount due is the essence of this notice. See *Deauville Corporation v. Garden Suburbs Golf & Country Club, Inc.*, 5 Cir. 1947,

164 F.2d 430, 432, *cert. denied*, 333 U.S. 881, 68 S.Ct. 912, 92 L.Ed. 1156, (holding insufficient a similar statutory notice "naming no sum as that due").

The second notice was dated and mailed before the expiration of the stipulated 30 day grace period which ended on October 15. It was premature and, therefore, ineffectual. Furthermore, it specified no termination date. Instead, the letter ambiguously recites:

"Accordingly, your lease terminates ten (10) days after the effective date of my letter dated September 14, 1981, namely, October 15, 1981."

By "effective date" the landlords presumably meant the deadline to cure the default, October 15. The lease could not be terminated earlier than 10 *working* days after October 15 (October 29). That date, the essence of the second required notice, is not specified and is later than "ten (10) days after October 15.

In short, assuming the landlords can prove their allegations, they did not terminate this lease in strict accordance with its provisions. If the landlords had other grounds to terminate the lease or if they gave other notices which might have complied with § 21(a)(3), they are irrelevant in this action for they have not been alleged.

Count II is dismissed with prejudice.

The issues presented by Counts I and III will be tried on Thursday, February 18, 1982, at 9:30 a. m. in Courtroom 1406, 51 S.W. First Avenue, Miami, Florida.