In re D'LITES OF AMERICA, INC., Debtor-in-Possession.

D'LITES OF AMERICA, INC., Plaintiff,

v.

ZOHAR–GREENBOIM, INC., Defendant.

Bankruptcy No. A86–05785–WHD.
Adv. No. 86–0695A.

United States Bankruptcy Court,
N.D. Georgia,
Atlanta Division.

Oct. 29, 1986.

C. Richard McQueen, Schaune C. Griffin, Jeffrey P. Sweetland, Greene, Buckley, DeRieux & Jones, Atlanta, Ga., for plaintiff.

Stanford R. Solomon, Rudnick & Wolfe, Tampa, Fla., for defendant.

## ORDER

W.H. DRAKE, Jr., Bankruptcy Judge.

On August 7, 1986, D'Lites of America, Inc. ("D'Lites") filed a voluntary petition under Chapter 11 of the Bankruptcy Code. This adversary proceeding was commenced by D'Lites against Zohar-Greenboim, Inc. ("Zohar-Greenboim") on September 9, 1986 by the filing of a complaint seeking an injunction precluding Zohar-Greenboim from taking possession or seeking to take possession of specified real property, improvements, and equipment situated in Tampa, Florida.

Based on D'Lites' contention that the lease relating to the subject property constituted property of the bankruptcy estate, this Court, on September 9, 1986, entered a temporary restraining order enjoining Zohar-Greenboim from pursuing its state court action in *Zohar-Greenboim v. Suncoast D'Lites, Inc. and D'Lites of America, Inc.*, Case No. 86–13510, Circuit Court for Hillsborough County, Florida. This order was modified on September 10, 1986 to allow Zohar-Greenboim to pursue its claims as to monetary damages only.

At a hearing held September 16, 1986, the Court heard arguments regarding whether the temporary injunction should be continued. It became clear that a determination of this question, as well as the question involved in Zohar-Greenboim's motion to modify the automatic stay, depended on the preliminary issue of whether the subject lease had been terminated under state law prior to the filing of the bankruptcy petition. The Court therefore requested briefs on this issue.

Both parties have stipulated that the documents submitted with Zohar-Greenboim's motion are authentic and constitute the evidence to be considered by the Court in making its rulings on whether the lease in question has been terminated. These documents and the briefs submitted show the following facts:

On September 8, 1983, Zohar-Greenboim entered into a Ground Sublease (the Lease) with Suncoast D'Lites, Inc., a Florida corporation ("Suncoast D'Lites"), for a piece of real property situated at the entrance to a shopping center in Tampa, Florida. Suncoast D'Lites subsequently constructed a freestanding restaurant building on the leased property. There was an attempted assignment of the Lease from Suncoast D'Lites to D'Lites of America, Inc. on August 3, 1984 as part of D'Lites' purchase of the assets of Suncoast D'Lites. The validity of this assignment is disputed and is not presently before the Court.

Zohar-Greenboim bases its argument that the Lease had been terminated pre-petition mainly on its state court lawsuit following D'Lites' non-payment of rent and, secondarily, on several written notices of default sent to D'Lites or to Suncoast D'Lites prior to the filing of the state court action. D'Lites asserts that any attempted termination was invalid or premature under the terms of the Lease.

Termination is the key issue in this case because a lease agreement which has been validly terminated ceases to be assumable under § 365 of the Bankruptcy Code, and the automatic stay should be lifted to allow the lessor to pursue its remedies. *Matter of Mimi's of Atlanta, Inc.*, 5 B.R. 623 (Bankr.N.D.Ga.1980), *aff'd,* 11 B.R. 710 (N.D.Ga.1981). The Bankruptcy Court in *Mimi's* recognized that, in rare instances, equitable considerations may be relied upon to convert terminated agreements into assumable contracts. *Mimi's of Atlanta, Inc.,* 5 B.R. at 629. However, the Court found no equitable considerations in that case to justify the extraordinary remedy of reviving leases which had, "without question," been validly terminated. *Id.* at 628.

In *Mimi's*, the leases involved were for retail space for restaurants in a mall complex. Here, on the other hand, D'Lites leased only the real property, and not the restaurant space itself, from Zohar-Greenboim. Suncoast D'Lites built the restaurant building on the leased property at its own expense. Article 11.01 of the Lease provides that if the Lease is terminated because of the default of the Lessee, then title to all improvements and personal property on the leased land, except for the so-called "equipment package," will vest in the Lessor. While such a windfall to the Lessor clearly puts equity on the side of the Lessee, the Court would still be reluctant to revive a lease on these equitable grounds alone if it had been validly terminated. However, equitable considerations will still come into play in construing the Lease itself to determine if there has been a valid termination in accordance with the lease terms. Under 28 U.S.C. § 1481, bankruptcy courts are courts of equity, and equity abhors a forfeiture. *E.g., In re Belize Airways, Ltd.,* 5 B.R. 152, 154 (Bankr.S.D.Fla.1980).

Florida law[1] also disfavors forfeiture clauses in leases. *See Rader v. Prather,* 100 Fla. 591, 130 So. 15 (1930) (holding that equity will relieve against forfeiture of a lease for non-payment of rent); *see also Tollius v. Dutch Inns of America, Inc.,* 244 So.2d 467 (Fla.Dist.Ct.App.1970), *appeal dismissed,* 247 So.2d 437 (Fla.1971); *Brownlee v. Sussman,* 238 So.2d 317 (Fla.Dist.Ct.App.1970). Forfeiture provisions are therefore to be strictly construed against the party seeking to invoke them. *Waits v. Orange Creek Turpentine Corp.,* 123 Fla. 31, 166 So. 449 (1936).

Zohar-Greenboim argues that the Lease is terminated pursuant to Florida law because multiple defaults by D'Lites continued after the expiration of all grace and cure periods provided in the Lease. However, it is the Court's view that if Zohar-Greenboim is asserting that the existence of defaults is sufficient to constitute termination, this is incorrect. Under Florida law and under the Lease there is a definite distinction between default under a lease and termination of a lease.[2] In Florida, a default can be waived by the nondefaulting party's failure to take action and continuing acceptance of benefits—e.g. rent payments. *Moskos v. Hand,* 247 So.2d 795 (Fla.Dist.Ct.App.1971). It has therefore been stated that Florida law will not allow a termination or forfeiture clause in a lease to be self-executing or automatic. *In re Cowboys, Inc.,* 24 B.R. 15, 15–16 (Bankr.S.D.Fla.1982); *In re Final Touch Boutique, Inc.,* 6 B.R. 803, 807 (Bankr.S.D.Fla.1980).

The Lease itself also differentiates between default and termination. Article 10.01(b) of the Lease provides in part: "If any one or more of the following events (hereinafter called 'events of default') shall happen: ... then and in any such event Lessor may ... elect to terminate this Lease...." Clearly then, the Lessor must have taken some action for the Lease to be terminated. While Florida law does not apparently require a lessor to obtain a final judgment in an action to have the lease declared terminated or to remove the lessee, there must be some affirmative action on the lessor's part evidencing an intention to treat the lease as forfeited. *See Altiere v. Atlantic National Bank of West Palm Beach,* 168 So.2d 693 (Fla.Dist.Ct.App.1964); *see also In re Belize Airways, Inc.,* 5 B.R. 152, 155 (Bankr.S.D.Fla.1980).

■ None of the letters sent by Zohar-Greenboim to D'Lites evidences an intent to terminate the Lease. Some merely demand payments or the performance of cer-

**1.** Under 11 U.S.C. § 365(c)(3) the question of whether a lease of non-residential real property has been terminated is one of "nonbankruptcy" law. Florida law controls here because the original lease was executed by two Florida corporations, Zohar-Greenboim and Suncoast D'Lites, for property located in Florida.

**2.** The Bankruptcy Code also contemplates that default is not the same as termination. A lease can be assumed, even if there has been a default, by meeting the requirements of § 365(b)(1), but a terminated lease of nonresidential real property cannot be assumed under § 365(c)(3).

tain non-monetary obligations under the Lease. Other letters inform the lessee that it is in default and state that legal action *will* be taken if lessee does not bring itself into compliance with the Lease. The letters are clearly attempts to notify D'Lites of defaults and provide an opportunity to correct them. They do not indicate that Zohar-Greenboim has elected to terminate the Lease.

Zohar-Greenboim is correct in its assertion that a provision waiving notice of termination is valid under Florida law. *See Matter of Fontaine Janitorial Supply & Service, Inc.,* 17 B.R. 322, 324 (Bankr.M.D. Fla.1982);[3] *Moskos v. Hand,* 247 So.2d 795 (Fla.Dist.Ct.App.1971). However, even though Zohar-Greenboim may not have been legally obligated to send the letters giving notice of default in rent payments because D'Lites waived such notice as to monetary defaults in the Lease, this does not mean that sending the notices was sufficient to terminate the Lease. As stated earlier, these letters merely notified the lessee of the default in rent and stated that further action would be taken if the rent was not received.

■ Since the existence of defaults and the sending of the letters relating to default are not sufficient to constitute termination, the only affirmative action on Zohar-Greenboim's part that clearly evidences its intent to treat the Lease as forfeited is the filing of the state court suit on July 30, 1986 in which paragraph #10 of the complaint stated that Zohar-Greenboim exercised its option to terminate based on the "breaches" as enumerated therein. Commencing this action would be sufficient to constitute termination as long as the lessor complied with any lease provisions dealing with termination, which, as stated previously, will be strictly construed against the party asserting forfeiture.

This principle was most recently applied by a Florida Bankruptcy Court in *Matter of Condominium Administrative Services, Inc.,* 55 B.R. 792 (Bankr.M.D.Fla.1985). In that case, U.S. Bankruptcy Judge Paskay held that the lease in question was not terminated in spite of the fact that a default judgment had been entered against the lessees in the lessors' state court action for possession. This holding was based on a provision of the lease which specified the following as one of the lessors' remedies upon default:

> Declare the agreement terminated and cancelled causing the balance of the term of the lease forfeited and re-enter the demised premises. If the Buyer remains in possession following the termination of this agreement, they shall be deemed hold over tenants and subject to removal by ... summary eviction proceedings....

*Condominium Administrative Services,* 55 B.R. at 796. Interpreting this provision in light of the principle of equity disfavoring forfeiture, the Court held that the lessors had to take some action to *declare* the lease terminated and cancelled *before* proceeding with their statutory remedies, and that therefore the notices of default and the subsequent lawsuit did not operate to terminate the lease. *Id.* at 797.

Similarly, in *In re MJK, Inc.,* 18 B.R. 76 (Bankr.S.D.Fla.1982), the lease was held not to be terminated when the landlord failed to strictly comply with a provision that if a default was not cured within 30 days after notice of the default, then the landlord could notify the tenant of its election to terminate. The lessor sent one letter which attempted to notify the lessee of a default and a second letter which attempted to notify the lessee of the election to terminate. This second letter was dated and mailed before the expiration of the 30–day grace period following the receipt of the first letter. The second letter was

---

3. The *Fontaine* case also held that non-payment of rent operated as a forfeiture under the terms of the lease involved there. 17 B.R. at 325. This appears inconsistent with the cases cited earlier stating that forfeiture clauses are not

self-executing and in particular with the state case, *Altiere v. Atlantic National Bank of West Palm Beach,* 168 So.2d 693 (Fla.Dist.Ct.App. 1964) (holding that lease does not terminate automatically despite language in lease).

thus found to be "premature and, therefore, ineffectual." 18 B.R. at 78.

■ This Court similarly finds the state action filed by Zohar-Greenboim to have been filed prematurely or not in strict accordance with the terms of the Lease, because the Lease gave the lessor the power to elect to terminate only after certain cure periods had run or, in some instances, after proper notice had been given of the defaults in question.

First, Zohar-Greenboim relies upon the defaults in making payments for sewer system connection and for a pro-rata share of maintenance of a lift station. Zohar-Greenboim sent D'Lites letters demanding these two payments on June 2, 1986 and June 13, 1986 respectively. The Lease gives the lessor the power to terminate without notice for defaults relating to lessee's failure to pay a sum of money if such failure continues for 20 days. Notice was required as to the two payments in question, however, because the Lease provided that said payments were to be made "to Main Street Shopping Center, or its successors or assigns on demand." This provision appears to require that the demands for payment be made by Main Street Shopping Center itself, rather than by Zohar-Greenboim. The lessor could have terminated the Lease by filing suit 20 days after demands for payment by Main Street Shopping Center. No such demands were apparently made, so the filing of the suit as to these defaults did not terminate the Lease.

Second, Zohar-Greenboim based its state lawsuit on the defaults in failing to maintain the "common area" property and the failure to maintain insurance coverage. Zohar-Greenboim sent D'Lites letters notifying it of these two defaults on July 18, 1986 and July 22, 1986 respectively. As to non-monetary defaults, the Lease allows the Lessor to elect to terminate only if the defaults continue for 25 days after notice in writing of the default. Therefore, the lessor's filing of its complaint in state court on July 30, 1986 was premature as to these defaults, and consequently did not operate to terminate the Lease.

Third, Zohar-Greenboim's main basis for its state court suit was D'Lites' default in failing to pay the rent for July, 1986. Although Zohar-Greenboim sent letters to D'Lites demanding payment on July 11, 1986 and on July 21, 1986, the Lease provides that the lessor can elect to terminate *without notice* for any default in the "punctual" payment of rent if the default continues for 20 days. The Lease further provides that the rent is payable in advance on the first day of each month but that payments made between the first and tenth days of the month are without penalty. Construing this provision against the lessor, the Court agrees with D'Lites that a default in "punctual payment" of rent occurs on the 11th day of the month, when a late penalty is incurred. Therefore, since the lessor could not elect to terminate until the default in punctual payment continues for 20 days, lessor could not terminate based upon the failure to pay the July rent until July 31, 1986. Thus, filing the suit on July 30 was premature and did not effect a termination.

■ Finally, as to D'Lites' failure to construct the minimum number of parking spaces required by the Lease, Zohar-Greenboim sent notice of this default on December 29, 1983. By continuing to accept rent payments long after this default, Zohar-Greenboim must be deemed to be equitably estopped from asserting a termination based on this default in spite of the "No Waiver" clause of the Lease. *See Moskos v. Hand,* 247 So.2d 795 (Fla.Dist.Ct.App. 1971). Consequently, as to this default, the state lawsuit did not work a termination.

In summary, Zohar-Greenboim failed to effectively terminate the Lease prior to the filing of D'Lites' bankruptcy petition. The Lease is therefore property of the estate and is subject to assumption or rejection (assuming, without deciding, that the assignment of the Lease from Suncoast D'Lites to D'Lites was valid). The temporary injunction against Zohar-Greenboim is ORDERED to be continued.

Zohar-Greenboim has also requested that this Court require D'Lites to bring its obligations under the Lease current and to give adequate assurance of future performance. Under 11 U.S.C. § 365(b)(1), the lessor is not entitled to a cure of past defaults or adequate assurance of future performance until the debtor moves to assume the contract, which decision has not yet been made. Under § 365(d)(3), however, the debtor should have been timely performing its obligations arising after the order for relief until the Lease is assumed or rejected. Therefore, since the Lease is held not to have been terminated pre-petition, D'Lites is ORDERED to bring current all Lease obligations that have arisen since August 7, 1986, the date of the petition, and to properly maintain the appearance of the property in accordance with Articles 4 and 5 of the Lease.

IT IS SO ORDERED.