## In re D'LITES OF AMERICA, INC., Debtor.

**Bankruptcy No. A86–05785–WHD.**

United States Bankruptcy Court, N.D. Georgia, Atlanta Division.

May 27, 1988.

Barclay T. Macon, Jr., Gregory R. Crochet, Kutak Rock & Campbell, Atlanta, Ga., for Robin Roach and Morton H. Fleischer.

Schaune C. Griffin, Michael H. Shuster, Greene, Buckley, DeRieux & Jones, Atlanta, Ga., for debtor.

### ORDER

W. HOMER DRAKE, Jr., Bankruptcy Judge.

This case is before the Court on a Motion and Claim for Payment of Administrative Expenses filed by Robin Roach and Morton H. Fleischer ("Lessors"), as lessors under certain subleases entered into with the above-referenced debtor. The debtor filed an objection to the Lessors' motion and claim, and the Court conducted a hearing in this matter on January 25, 1988. The facts in this case are as follows.

In September of 1985 and January and February of 1986, the debtor entered into nine separate subleases with the Lessors for nine parcels of nonresidential real property on which the debtor operated nine D'Lites Restaurants. Five of the nine properties were located Florida, and four were in Georgia.

The debtor also leased certain equipment from the Lessors for use in its restaurants. The amount of monthly rental payments attributable to the lease of equipment, rather than real property, is represented by the monthly payments due under certain equipment notes admitted into evidence as plaintiff's (Lessor's) Exhibit 2A–2I. The evidence indicates that the monthly rental for the nonresidential real property and improvements, excluding the amounts due under the equipment notes, is $90,129.90. *See* Affidavit of Robin Roach; Transcript of January 25, 1988 Hearing at p. 22. This sum includes the amounts due for state lease taxes which were to be included as lease payments under the subleases.

As the debtor's financial difficulties increased in early 1986, principals of the debtor met with the Lessors in May to discuss a possible moratorium on rent payments under the subleases and various alternatives for dealing with the debtor's inability to meet its lease obligations.

Also, in May of 1986, the debtor's principals began developing a plan to close unprofitable stores, to rehabilitate the company, and to find an investor for the company. Pursuant to this plan, the debtor made attempts to market the nine subleased properties. The debtor also supplied the Lessors with financial information showing cash losses for most of the restaurants located on the subleased properties. One of the debtor's principals also provided a representative of the Lessors with documents which outlined the debtor's plan to consolidate its business and operate only nine restaurants, none of which were located on the subleased properties.

By July of 1986, the Lessors had given the debtor notice of default under the subleases. By letter dated July 1, 1986, the Lessors notified the debtor that immediate actions for possession would be commenced unless the debtor voluntarily and peaceably delivered possession without the necessity of filing such actions.

By letter dated July 10, 1986, the Lessors demanded all past due rentals, notified the debtor that failure to comply would result in the institution of actions for possession, and acknowledged that the Lessors understood that the debtor had ceased operations on and had no intention of re-entering six of the subleased properties.

On July 16, 1986, the debtor and the Lessors entered into a Turnover Agreement in which the parties acknowledged the debtor's breaches and defaults under the subleases, the Lessors' written demand for payment of all past due amounts or for surrender of possession, the Lessors' notification of their intent to institute legal actions for possession, and the debtor's desire to avoid having dispossessory proceedings brought against it. Pursuant to the Turnover Agreement, the debtor turned over possession and control of the nine properties to the Lessors. The Agreement provides in Paragraph 3 that the debtor's "relinquishment of possession of the Properties ... is not and will not be construed as a surrender of any of the Properties or as a termination, cancellation, or rescission of any of the Subleases...." Paragraph 3 further provides: "The terms and conditions of the Subleases ... and the duties and obligations of D'Lites thereunder are not terminated by reason of this Agreement or the repossession of the Properties by the [Lessors]."

The Lessors seek as an administrative expense payment of the rental due under the nine subleases, excluding the amounts due under the equipment notes, for the sixty-day period commencing on the date the debtor filed its petition, August 7, 1986, and ending on October 6, 1986. The Lessors' claim for administrative rent totals $175,097.35 representing $90,129.90 monthly rental for two months, less one payment by the debtor on one property in the amount of $5,162.45.

The Lessors base their administrative claim upon § 365(d)(3) and § 365(d)(4) of

the Bankruptcy Code. Code § 365(d)(3) provides that the trustee or debtor-in-possession shall timely perform all post-petition obligations under an unexpired lease of nonresidential real property until the lease is assumed or rejected. Code § 365(d)(4) provides that if the trustee or debtor-in-possession, as lessee, does not assume or reject an unexpired lease of nonresidential real property within 60 days after the date of the petition, then the lease is deemed rejected.

The Lessors assert that they are entitled to their rentals under the subleases as an administrative expense under § 365(d)(3) from the date the debtor filed its petition, to the date, sixty days later, when the subleases were deemed rejected by the operation of § 365(d)(4), because the debtor took no action to reject the subleases prior to that date. The debtor filed no motion to either assume or reject the subleases during the sixty-day period, although it filed motions to reject other leases of real property during the period. The debtor also made no communication with the Lessors during the sixty-day period as to the debtor's intentions with respect to the subleased properties.

On December 10, 1986, after the expiration of the sixty-day period on October 6, the debtor filed a blanket notice of rejection of all leases of real property which had not previously been assumed by motion and order. On December 17, 1986, the Lessors filed their motion for an order approving the debtor's rejection of the nine subleases. This motion was resolved by a Consent Order entered on March 10, 1987, which provided that the subleases were terminated as of October 6, 1986, but which reserved decision on whether the Lessors were entitled to post-petition rent as an administrative expense.

The debtor raises several arguments to attempt to avoid the operation of § 365(d)(3) to require the full payment[1] of administrative rent for the sixty-day period leading up to the automatic rejection of the subleases pursuant to § 365(d)(4).

First, the debtor asserts that its pre-petition execution of the Turnover Agreement effectively terminated the nine subleases so that the debtor was left without the right to assume or reject the subleases. The debtor points to the fact that the Turnover Agreement acknowledges that the debtor was in default under the subleases and that the debtor wished to avoid having dispossessory proceedings brought against it. Thus, the debtor argues, the Turnover Agreement accomplished the same result as dispossessory actions.

The Court cannot agree with the debtor's assertion that the Turnover Agreement cut off the debtor's rights in the subleases and left the debtor with no right to assume or reject. The Turnover Agreement expressly provides that the subleases are not terminated by the debtor's surrender of possession. Because of the broad definition of property of a debtor's estate under § 541(a), this Court has adopted a strict interpretation of "termination" of a lease, since termination removes from the debtor the option to assume or reject. *See* § 365(c)(3). In fact, in a previous decision involving this debtor and a different lessor, the Court held that the underlying lease was not terminated notwithstanding the lessor's filing of a dispossessory complaint which stated that the lessor was exercising its option to terminate the lease. *In re D'Lites of America, Inc.,* 66 B.R. 558 (Bankr.N.D.Ga.1986). A holding in this matter that the Turnover Agreement terminated the debtor's rights under the subleases would not be consistent with the reasoning of this earlier decision. If the debtor

1. The Court notes that, if not for the enactment of § 365(d)(3) by Congress in 1984 and that subsection's requirement that all of a debtor's obligations under a lease of nonresidential real property be performed up to the time of rejection, the debtor might only be liable for payment for its use and occupancy of the premises. *See e.g., In re Subscription Television of Greater Atlanta,* 789 F.2d 1530 (11th Cir.1986) (trustee liable only for use of services during sixty-day period before automatic rejection of an executory contract which was not a lease of real property). *See also In re Coastal Dry Dock & Repair Corp.,* 62 B.R. 879, 882–83 (Bankr.E.D.N.Y.1986) (debtor is liable for full rental notwithstanding the fact that it was using only a portion of the leased premises).

had desired to assume the subleases at issue herein, the Court would have had no difficulty in finding that the subleases had not been terminated prepetition, and the fact that the controversy has arisen in a different posture should not change this result.

The debtor's next argument is that its actions and the circumstances of this case made it clear to the Lessors that the debtor intended to reject the subleases prior to the expiration of the sixty-day period or that the debtor regarded itself as having no further interest in the subleased properties. The Court must reject this argument for two reasons.

■ First, the majority rule regarding the assumption of leases is that a formal motion to assume is required and that a lease cannot be assumed by conduct or implication. *See In re Treat Fitness Center, Inc.*, 60 B.R. 878 (Bankr.App.Panel 9th Cir.1986); *In re BDM Corp.*, 71 B.R. 142 (Bankr.N.D.Ill.1987); *In re OK Kwi Lynn Candles, Inc.*, 75 B.R. 97 (Bankr.N.D.Ohio 1987). The minority view that a debtor can assume or reject a lease without formal motion by communicating its intent to the lessor in an unequivocal manner is represented mainly by the case of *In re 1 Potato 2, Inc.*, 58 B.R. 752 (Bankr.D.Minn.1986).

Recently in this district, U.S. Bankruptcy Judge A.D. Kahn adopted the majority approach taken by *Treat Fitness* and others. *Matter of Dublin Pub, Inc.*, 81 B.R. 735 (Bankr.N.D.Ga.1988). The undersigned agrees with this holding.

The Court notes, however, that most of the previously cited cases dealt with the question of whether a lease can be *assumed* without a formal motion and not the issue involved in this case of whether *rejection* without a formal motion is possible. The only apparent distinction in the two situations is that, while a lease can never be assumed without court approval, a lease can be rejected automatically and without court approval pursuant to § 365(d)(4). This appears to be a distinction without a difference. The same reasoning which requires assumption only by formal motion applies equally to a debtor wishing to reject a lease at any time prior to the automatic rejection which results upon the expiration of the sixty-day period.

■ Even if the subleases could be rejected by conduct, the Court would have to reject the debtor's assertion that it clearly communicated its intent to reject them. The debtor mainly relies upon its pre-petition actions for its assertions that its intent with regard to the subleases was clear, since it did not, during the sixty-day period, communicate to the Lessors any intent to reject. Although the circumstances of the Turnover Agreement may have made it clear that the debtor itself intended not to use or operate the properties again, this is not sufficient to constitute an unequivocal communication of an intent to reject the subleases once the debtor filed its petition. In fact, the option to assume or reject, and the benefits and burdens which accompany this option, do not arise until the bankruptcy case is filed. Since the Court has found that subleases were not terminated pre-petition and that the debtor still had the option to assume or reject the leases, one of the benefits the debtor may have obtained upon filing its petition was the ability to assign the subleases notwithstanding certain restrictions on assignment provided by the subleases, if any. Therefore, formal rejection or rejection by way of a communication of an intent to reject should only occur after the commencement of the bankruptcy case.

For similar reasons, the Court must reject the debtor's argument that the pre-petition Turnover Agreement had the same effect as a rejection.

Accordingly, it is ORDERED that the Motion and Claim for Payment of Administrative Expenses filed by Robin Roach and Morton H. Fleischer is GRANTED to the extent of $175,097.35, to be paid under the debtor's plan of liquidation.