**In re Walter Jackson SUMMERS and Cheryl W. Summers, Debtors.**

**Bankruptcy No. A88–03304–WHD.**

United States Bankruptcy Court,
N.D. Georgia,
Atlanta Division.

June 15, 1988.

John C. Pennington, Norton, Pennington, Goetz, Cronkright & Prior, Atlanta, Ga., for debtors.

Harry J. Winograd, Mark E. Bergeson, Alembik, Fine & Callner, P.A., Atlanta, Ga., for Claude W. Bailey.

## ORDER

W. HOMER DRAKE, Jr., Bankruptcy Judge.

This case is before the Court on the above-referenced debtors' motion to assume and assign a lease and the lessor's motion to deny approval of assumption and assignment. The lessor, Claude W. Bailey, asserts that he terminated his lease with the debtors prior to the date they filed their Chapter 11 petition. The Court conducted a hearing on this matter on May 25, 1988, and requested the parties to submit briefs within ten days[1] on the issues of whether the lease in question had been validly terminated prior to the date of the petition and whether this Court was empowered to reinstate the lease if it was in fact terminated pre-petition.[2] The facts of the case are as follows.

On February 28, 1986, Claude W. Bailey, as lessor, entered into a lease of a building and equipment with one of the debtors, Cheryl W. Summers, as tenant/lessee. The leased premises had been used by the lessor as a grocery store, which the debtors continued to operate as lessees. The lease provided for a monthly rental of $2,500.00 for a renewable three-year term.

The lease (Debtors' Exhibit No. 20) provides in paragraph 6 that the lessee shall maintain the premises "including lawn maintenance and landscaping, in good order and repair" and shall not allow the premises "to fall out of repair or deteriorate...." The lessees further agreed in paragraph 12 to comply with all requirements of any public authority made necessary by the reason of the lessees' occupancy of the premises.

Paragraph 16 of the lease provides that the lessor has the option to terminate the lease in the event that the lessee "shall fail to comply with any term, provision, condition, or covenant of this lease, other than the payment of rent, and shall not cure such failure within twenty (20) days after notice to the Lessee of such failure to comply...."

Photographic evidence submitted by the lessor shows that, in early 1988, the debtors had allowed trash, debris and weeds to accumulate around the leased premises and had burned some trash on the premises.

On February 8, 1988, the debtors received an inspection report from the state Department of Agriculture (Debtors' Exhibit No. 2) which listed a violation in that the debtors needed to clean up around their dumpster area, where they had burned some boxes which would have otherwise filled up their dumpster. See Transcript of May 25 hearing at p. 15.

In early February, the lessor's insurance agent contacted the debtors about burning boxes on the premises. The debtor, Mr. Summers, testified that he only burned the boxes when he had a burning permit from the county fire department and that the last permit on record was for February 7, 1988. See Transcript at pp. 12, 26, 29. The debtor further testified that he ceased to burn boxes on the premises pursuant to the request of the insurance agent after the February 7 permit.

---

1. The lessor filed a brief on June 6, 1988, and a reply brief on June 14, 1988. The debtors' brief was filed on June 7, 1988. The lessor's reply brief asserts that the debtors' brief should be stricken as untimely. This is unnecessary since all evidence and arguments were presented at the hearing.

2. The lessor's briefs appear to assert that the Court limited its decision to the second issue and that the first issue, whether the lease was validly terminated, was finally decided at the hearing. This is not the case. See Transcript of Hearing on May 25, 1988 at p. 83–84.

The debtor subsequently received a copy of a letter dated February 24 (Debtors' Exhibit No. 19) from the lessor's insurance agent to the lessor which indicated, as a "follow-up" to a letter of February 2 (not in evidence), that there was evidence of additional burning on the premises and that the weeds and brush needed to be cleaned up to reduce the risk of fire.

On February 29, 1988, the lessor's attorneys sent the debtor a certified letter (Lessor's Exhibit No. 5) which stated that the terms of the lease had been violated by the violation of the Department of Agriculture's regulations concerning the disposal of trash as indicated in the inspection report, by the debtor's failure to maintain the premises in permitting weeds and trash to accumulate, and by burning trash.

The debtor, Mr. Summers, testified that he had taken steps to clean up the premises following the Department of Agriculture's report and the first contact from the lessor's insurance agent in early February. He testified that he obtained a larger dumpster around February 15 and that he had had the burned trash hauled off by that time. See Transcript at p. 16. The evidence showed that he was billed for the larger dumpster on March 9, 1988 (Debtors' Exhibit No. 5) and that he made a cash payment to the workers who helped clean up the premises on March 15 (Debtors' Exhibit No. 4; Transcript at p. 17–18).

By letter dated March 7, 1988 (Debtors' Exhibit No. 16), the debtors' attorneys advised the lessor's attorneys that the premises had been cleaned up to comply with the Department of Agriculture regulations, that all weeds and trash had been cleaned up, that no burning had taken place since February 7, and that no additional burning would take place on the premises. The debtors' letter refers to the lessor's default notification letter of February 29 and states: "Unless we otherwise hear from you we will consider these matters cured as well."

On March 21, 1988, the lessor's attorneys sent the debtors a letter (Debtors' Exhibit No. 14) which declared the lease terminated for the debtor's failure "to keep the prem-

ises and surrounding areas even reasonably free of trash and weeds, thereby greatly increasing the risks of damage to the premises by fire...." In a letter dated March 25, 1988 (Lessor's Exhibit No. 6), the lessor's attorneys cited the debtor's failure to comply with the requirements of the Department of Agriculture as an additional reason for termination.

In other letters exchanged between the attorneys for the parties, the debtors denied that they had violated the lease and refused to vacate (Debtors' Exhibit No. 13), the lessor offered to allow the debtors to remain as tenants-at-will (Lessor's Exhibit No. 7), and the debtors rejected the tenant-at-will relationship and again asserted that the lease had not been validly terminated (Debtors' Exhibit No. 8).

The debtors filed their Chapter 11 petition on April 13, 1988. Their motion for approval of assumption and assignment of the lease was filed on May 10, 1988.

A lease agreement which has been validly terminated under applicable nonbankruptcy law prior to the filing of a petition generally ceases to be an assumable agreement under § 365 of the Bankruptcy Code. See 11 U.S.C. § 365(c)(3). See also Matter of Mimi's of Atlanta, Inc., 5 B.R. 623 (Bankr.N.D.Ga.1980), aff'd, 11 B.R. 710 (N.D.Ga.1981).

Under Georgia law, it does not appear that a landlord must institute a legal action for possession in order to validly terminate a lease. Instead, when a lease requires notice of default, it must appear that a default occurred, that the lessor gave clear and unambiguous notice of the default and the termination, and that the lessor strictly complied with the terms of the lease in effecting the termination. See Woodall v. Pharr, 119 Ga.App. 692, 168 S.E.2d 645 (1969), aff'd, 226 Ga. 1, 172 S.E.2d 404 (1970).

As a court of equity, this Court has also required strict compliance with the terms of a lease in order for the lessor to validly terminate the lease. See In re D'Lites of America, Inc., 66 B.R. 558 (Bankr.N.D.Ga. 1986) (lessor's dispossessory action, which asserted termination of a lease, was prema-

ture and not in strict accordance with the lease terms when certain grace periods for curing default had not run). In a more recent decision, the Court stated: "Because of the broad definition of property of a debtor's estate under § 541(a), this Court has adopted a strict interpretation of 'termination' of a lease, since termination removes from the debtor the option to assume or reject." *In re D'Lites of America, Inc.,* 86 B.R. 299 (Bankr.N.D.Ga.1988).

█ Strictly construing the lease in question in the instant case, the Court finds that the lessor's letter of March 21, 1988, which explicitly declared the lease terminated, was not effective to validly terminate the lease because the debtors had taken substantial steps toward curing their default within the twenty-day grace period following the notice of non-monetary default contained in the lessor's letter of February 29, and the lessor had not notified the debtors that he considered their efforts to cure to be insufficient.

The evidence is clear that the debtors had obtained a larger dumpster and had at least started and may have completed their clean-up of the premises prior to the expiration of the cure period. Whether the debtors' efforts prior to March 21, 1988 were sufficient to cure their default is largely a subjective question. However, it appears to the Court that the debtors' letter of March 7, 1988, which advised the lessor that the premises had been cleaned up and that these matters would be considered cured, placed a burden on the lessor to notify his tenants of what further steps he considered to be required in order to cure the default. Absent such notification, the Court finds that the efforts made by the debtors during the twenty-day cure period provided by the lease effectively cured their default and removed from the lessor his option to terminate the lease based upon such default.

█ The Court therefore holds that the lease in question was not validly terminated prior to the date of filing. It appears that the remaining requirements of § 365 for the assumption and assignment of the lease have been met, since the proposed assignee stands ready to pay two months rent in advance and is able to make future payments.

Accordingly, it is ORDERED that the debtors' Motion for Approval of Assumption and Assignment of Executory Lease Contract is GRANTED and Lessor's Motion to Deny Approval and to Modify Stay is DENIED.