In re SHELLY'S, INC., Debtor.

SHELLY'S, INC., Plaintiff,

v.

FOOD CONCEPTS OF WISCONSIN, INC., et al., Defendants.

Bankruptcy No. 2–88–03103.
Adv. P. No. 2–88–0184.

United States Bankruptcy Court,
S.D. Ohio, E.D.

June 27, 1988.

James Vaughn, Wesp, Osterkamp & Stratton, Columbus, Ohio, for plaintiff.

J. Gary Coffman, Mark A. Leiendecker, Teaford, Rich, Belskis, Coffman & Wheeler, Columbus, Ohio, for defendants.

Charles M. Caldwell, Columbus, Ohio, U.S. Trustee.

R. GUY COLE, Jr., Bankruptcy Judge.

## OPINION AND ORDER ON MOTION FOR A TEMPORARY RESTRAINING ORDER AND PRELIMINARY INJUNCTION

### I. *Preliminary Statement*

This matter is before the Court upon the Motion For A Temporary Restraining Order and Preliminary Injunction filed by Shelly's, Inc. ("Shelly's"), the debtor-in-possession in Case No. 2–88–03103, and the plaintiff in this adversary proceeding. The Court has jurisdiction over this case pursuant to 28 U.S.C. § 1334(b) and the General Order of Reference entered in this judicial district. This is a core proceeding which the Court may hear and determine. 28 U.S.C. § 157(b)(1), and (2)(A) and (O). The following opinion and order constitutes the Court's findings of fact and conclusions of law pursuant to Bankruptcy Rule ("B.R.") 7052.

### II. *Factual Background*

On June 20, 1988, Shelly's filed with this Court a petition for relief under Chapter 11 of the Bankruptcy Code. On June 23, 1988, Shelly's filed a verified complaint requesting, *inter alia*, the issuance of a temporary restraining order ("TRO"), a preliminary and permanent injunction, and an award of damages. Shelly's request for a temporary restraining order ("TRO Motion") came before the Court for a non-evidentiary hearing on June 23, 1988. Following the hearing, this matter was taken under advisement. The defendants in this adversary proceeding—Food Concepts of Wisconsin, Inc., David Boxer ("Boxer"), Richard D. Turcott, M.D. and John Doe (hereinafter collectively referred to as the

"Defendants") were represented by counsel at the hearing on the TRO Motion.

The relevant allegations of fact set forth in Shelly's verified complaint are as follows:

(1) Following a series of negotiations between Boxer and Jerry Miras, the President of Shelly's, on May 16, 1987, Shelly's and the Defendants executed a document denominated as the "Development Agreement."

(2) Pursuant to the Development Agreement, the Defendants were granted the right to develop five or six Shelly's restaurants in the Milwaukee–Madison, Wisconsin, geographical area, in consideration for payment of the sum of $10,000 by Defendants to Shelly's.

(3) Concurrent with the execution of the Development Agreement, Shelly's and Defendants also executed a document entitled "Franchise Agreement" (also dated May 16, 1987). The material terms and conditions of the Franchise Agreement are set forth below:

(a) Shelly's granted Defendants the right and franchise to operate a Shelly's restaurant in Brookfield, Wisconsin ("Brookfield Franchise"), for a term of fifteen (15) years;

(b) Defendants agreed to pay Shelly's an initial franchise fee of $20,000.00;

(c) Defendants agreed to undertake the operation of the Brookfield Franchise and to pay to Shelly's a continuing monthly royalty fee in an amount equal to five percent (5%) of the gross sales of the Brookfield Franchise;

(d) Defendants agreed to submit to Shelly's a monthly royalty report reflecting the gross sales for the Brookfield Franchise, and to spend not less than two percent (2%) of the gross sales of the Brookfield Franchise for local advertising;

(e) Defendants agreed to operate the Brookfield Franchise in strict conformity with the methods and standards set forth by Shelly's in its Confidential Operating Manual; to devote their full time and best efforts to the operation of the Brookfield Franchise; and, not to divert, or attempt to divert, any business or customers from the Brookfield Franchise, or in any way injure the goodwill associated with Shelly's.

(4) On March 26, 1988, Food Concepts commenced operating the Brookfield Franchise.

(5) Shelly's contends that since commencing operation of the Brookfield Franchise, Defendants have breached the Franchise Agreement by virtue of their following acts and omissions:

(a) failure to pay the monthly royalty fee owed to Shelly's under the Franchise Agreement;

(b) failure to submit to Shelly's monthly royalty reports detailing the gross sales of the Brookfield Franchise;

(c) failure to spend the requisite amount for local advertising specified by the Franchise Agreement;

(d) failure to operate the Brookfield Franchise in conformity with the methods and standards delineated in the Franchise Agreement;

(e) failure to devote their full time and best efforts to the operation of the Brookfield Franchise; and/or

(f) attempted diversion of business and customers from the Brookfield Franchise and injury to the goodwill associated with Shelly's.

(6) Shelly's further alleges that Defendants intend, in the immediate future, to remove the Shelly's name, logo and signage from all exterior and interior fixtures located at the Brookfield Franchise; to remove trade-marked food items from the Franchise menu; and to alter the operations of the Brookfield Franchise in a manner which will damage the goodwill of Shelly's.

## III. *Discussion*

On the basis of the verified factual allegations enumerated above, Shelly's seeks the issuance of a temporary order which would:

(1) Restrain Defendants from operating the Brookfield Franchise and holding themselves out as present or former franchisees of Shelly's;

(2) Restrain the Defendants' use of any confidential methods, procedures and techniques associated with Shelly's, including the proprietary mark "Shelly's", and all other proprietary marks, signs, symbols and devices associated with Shelly's;

(3) Restrain Defendants' use of all signage, advertising materials, displays, stationery, forms and any other articles which display the proprietary marks of Shelly's;

(4) Require the delivery by the Defendants to Shelly's of all manuals, including Shelly's Confidential Operating Manual and Confidential Development Manual, records, files, instructions, correspondence and all other materials related to the operation of the Brookfield Franchise;

(5) Restrain the Defendants from operating any business the same as, or similar to, restaurants operated under the Shelly's concept of management in the Milwaukee–Madison geographical area for a two-year period.

At the hearing, counsel for Defendants indicated their intent to voluntarily comply with the requests for relief set forth in paragraphs (2), (3) and (4) of the TRO Motion as of June 27, 1988. Accordingly, the instant dispute centers upon the requests for injunctive relief described in paragraphs (1) and (5) above—*i.e.*, restraint of Defendants' operation of the restaurant in Brookfield as a Shelly's franchise; and, restraint of the operation by Defendants of any other restaurant similar to Shelly's in the Milwaukee–Madison area for a two-year time period. These remaining requests for injunctive relief will be examined by the Court below.

Shelly's TRO Motion is brought pursuant to B.R. 7065. With the exception of the fact that B.R. 7065 permits a bankruptcy court to dispense with the bond requirement contained in Fed.R.Civ.P. 65(c), B.R. 7065 is identical in all other respects to Rule 65. B.R. 7065 is a procedural rule—it provides the method of seeking and obtaining any sort of injunction. The rule has no bearing on either the Court's jurisdiction to exercise, or the propriety of its exercising the injunctive power. 7 *Moore's Federal Practice* ¶ 65.03[1] at 65–22 (2d ed. 1988). This Court's injunctive power derives from 11 U.S.C. § 105(a), which empowers a bankruptcy court to "issue any order, process, or judgment that is necessary or appropriate to carry out the provisions" of the Bankruptcy Code. *In re Otero Mills, Inc.,* 21 B.R. 777, 778 (Bankr. D.N.M.), *aff'd,* 25 B.R. 1018 (D.N.M.1982); *In re Baldwin–United Corp.,* 57 B.R. 759, 766 (S.D. Ohio 1985).

The traditional standards governing injunctive relief under Rule 65 are applicable for a § 105 injunction. *Baldwin–United,* 57 B.R. at 766. The Sixth Circuit has specified four factors that are particularly important in determining whether a preliminary injunction is proper:

(1) the likelihood of plaintiff's success on the merits;

(2) whether the injunction will save the plaintiff from irreparable injury;

(3) whether the injunction would harm others; and

(4) whether the public interest would be served by the injunction.

*Mason County Medical Association v. Knebel,* 563 F.2d 256, 260–62 (6th Cir.1977); *Unsecured Creditors Committee of DeLorean Motor Co. v. DeLorean (In re DeLorean Motor Co.),* 755 F.2d 1223, 1228 (6th Cir.1985). Although these four factors guide the discretion of the court, they do not establish a rigid and comprehensive test for determining the appropriateness of preliminary injunctive relief. "A fixed legal standard is not the essence of equity jurisprudence...." *Roth v. Bank of the Commonwealth,* 583 F.2d 527, 537 (6th Cir.1978). Nevertheless, a preliminary injunction may not be granted unless a showing is made that the plaintiff would suffer irreparable injury without such relief. Despite the overall flexibility of the test for preliminary injunctive relief, and the discretion vested in the court, equity has traditionally required such irreparable harm before an interlocutory injunction may be issued. *See, Rondeau v. Mosinee Paper Corp.,* 422 U.S. 49, 61, 64–65, 95 S.Ct. 2069,

2077, 2078–79, 45 L.Ed.2d 12 (1975); *Friendship Materials, Inc. v. Michigan Brick, Inc.*, 679 F.2d 100, 103 (6th Cir. 1982).

■ A temporary restraining order is a temporary order entered in an action, often without notice, upon a summary showing of its necessity to prevent immediate and irreparable injury, pending a fuller hearing and determination of the rights of the parties or the court's jurisdiction upon a motion for preliminary injunction. The restraining order is intended only to preserve the *status quo* until the motion for a preliminary injunction can, after notice, be brought on for hearing and decision. *See, Sampson v. Murray*, 415 U.S. 61, 94 S.Ct. 937, 39 L.Ed.2d 166 (1974); 7 *Moore's Federal Practice* ¶ 65.05 at 65–100 to 65–101 (2d ed. 1988). Although the scope of a hearing on a temporary restraining order is necessarily more limited than a preliminary injunction hearing, the same four criteria enunciated by the Sixth Circuit in the *DeLorean* and *Knebel* cases govern a court's determination of whether to grant a temporary restraining order under Fed.R.Civ.P. 65(b). *Crews v. Radio 1330, Inc.*, 435 F.Supp 1002 (N.D. Ohio 1977).

In applying the Sixth Circuit's four-prong test to Shelly's remaining requests for injunctive relief, Rule 65(b) requires the Court to look to the specific facts set forth in Shelly's verified complaint. No actual evidence was adduced at the hearing upon the TRO Motion. At the outset, the Court notes that two of the four criteria postulated by the Sixth Circuit—*i.e.*, (1) the movant's likelihood of success on the merits; and (4) service of the public interest, provide little or no guidance here. Absent actual evidence, the Court is simply not in a position to assess whether there is a substantial likelihood that Shelly's will ultimately prevail on the merits. This finding should await the conclusion of an evidentiary preliminary injunction hearing. Further, the public interest does not appear to be implicated, or is only minimally implicated, by this private contractual dispute. Accordingly, the Court's decision will turn upon its application of factors (2) and (3) of the Sixth Circuit decisional formula—*i.e.*,

(1) whether Shelly's has shown irreparable injury; and (2) whether issuance of the requested TRO will cause substantial harm to others.

### Irreparable Injury

■ The Supreme Court has stated that "[t]he basis of injunctive relief in the federal courts has always been irreparable harm and inadequacy of legal remedies." *Sampson v. Murray*, 415 U.S. at 88, 94 S.Ct. at 951–52 (quoting *Beacon Theatres, Inc. v. Westover*, 359 U.S. 500, 506–07, 79 S.Ct. 948, 954–55, 3 L.Ed.2d 988 (1959)). The concept of "irreparable injury" has been described as follows:

> The key word in this consideration is *irreparable*. Mere injuries, however substantial, in terms of money, time and energy necessarily expended in the absence of a stay are not enough. The possibility that adequate compensatory or other corrective relief will be available at a later date, in the ordinary course of litigation, weighs heavily against a claim of irreparable harm.

*Sampson*, 415 U.S. at 90, 94 S.Ct. at 952–53 (quoting *Virginia Petroleum Jobbers Association v. FPC*, 259 F.2d 921 (D.C.Cir. 1958)).

Here, the Court is unconvinced that the character of the injury described in Shelly's verified complaint is truly irreparable so as to justify the extraordinary relief sought. Essentially, the dispute between Shelly's and Defendants is a contractual one. While some damage to Shelly's reputation may incidentally arise from the facts complained of, the claimed injury is, at bottom, financial, *i.e.*, the loss of money, a loss capable of recoupment in an action at law. *See, In re Arthur Treachers Franchisee Litigation*, 689 F.2d 1137, 1145–47 (3d Cir. 1982) (vacating district court's preliminary injunction order on ground that franchisor's claims for breach of the franchise agreement were capable of ascertainment and monetary damages would compensate the franchisor for its losses). *Cf., Dellwood Foods, Inc. v. Kraftco Corp.*, 420 F.Supp. 424, 427 (S.D.N.Y.1976) (breach of non-competition agreement by competing

milk producer does not constitute irreparable harm where imposition of damages, which were capable of ascertainment, after final resolution of the litigation, would adequately compensate the plaintiff); *Mountain Medical Equipment v. Healthdyne*, 582 F.Supp. 846, 848 (D.Colo.1984) (future losses, if quantifiable, do not constitute irreparable injury). Hence, the Court concludes that the alleged damage to reputation which may be suffered by Shelly's is simply a tangential element of what is, at heart, a financial dispute (a breach of contract action). Accordingly, the verified complaint's failure face to establish an irreparable injury, as defined by the case law, precludes this Court from issuing the TRO sought by Shelly's.

### Substantial Harm to Others

■ Even assuming *arguendo* that Shelly's verified complaint has established an irreparable injury, Shelly's is not *ipso facto* entitled to injunctive relief. The Court must consider the final Sixth Circuit decisional factor—whether substantial injury to others will result from the injunctive relief. *Friendship Materials*, 679 F.2d at 103–04; *Martin–Marietta Corp. v. Bendex Corp.*, 690 F.2d 558, 568 (6th Cir.1982). *Ideal Industries v. Gardner Bender, Inc.*, 612 F.2d 1018, 1026 (7th Cir.1979), *cert. denied*, 447 U.S. 924, 100 S.Ct. 3016, 65 L.Ed.2d 1116 (1980) (even where irreparable harm has been shown, the court must consider the relative hardship to the parties in its decision to grant or deny preliminary relief). Consideration of this factor also militates strongly against granting the TRO Motion. It is indisputable that substantial harm will flow to the Defendants if the TRO Motion is granted. The substantiality of the harm which Defendants would suffer if the requested relief were obtained stems largely from the nature of the injunction sought. Shelly's asks this Court to enjoin Defendants from operating the Brookfield Franchise as a Shelly's franchise. Shelly's also asks the Court to restrain Defendants from operating any other similar restaurant at the Brookfield location. Thus, in one fell swoop, Shelly's would have the Court put the Defendants out of business in Brookfield, Wisconsin, until a hearing on the preliminary injunction is concluded and the Court reaches a decision. While the Defendants await a ruling on the preliminary injunction request, they would be faced with the loss of operating revenue, customers, and possibly many of their employees, as a result of the closing of the Brookfield Franchise. In weighing the harm to Shelly's arising from damage to reputation/goodwill versus the resultant harm to Defendants occasioned by the draconian measure of closing their business, the balance tips decidedly in favor of Defendants. Accordingly, application of the "balancing-of-relative-harm" test also precludes the Court from granting the TRO Motion.

The Court's decision pertains only to Shelly's request for the issuance of a TRO. Shelly's shall be afforded an opportunity to present its motion for a preliminary injunction at an evidentiary hearing. The Court does not intend to prejudge the issue of whether a preliminary injunction should be issued against the Defendants. However, the Court is compelled to comment on the seeming inappropriateness of injunctive relief in this case. Even if the verified allegations set forth in Shelly's complaint are ultimately established, the Court, nevertheless, would not be inclined to enjoin defendants from operating its business pending conclusion of the underlying litigation. Because the damages suffered by Shelly's as a result of the alleged breach of the franchise agreement are ascertainable, there appear to be adequate legal means for redressing Shelly's claims. Furthermore, damage to Defendants would be substantial, if an injunction were issued in this case. Finally, although not raised by the parties, legitimate questions regarding the Court's jurisdiction to ultimately adjudicate the breach of contract claim, a claim based wholly upon state law, may well be raised. *See, generally, Northern Pipeline Co. v. Marathon Pipeline Co.*, 458 U.S. 50, 102 S.Ct. 2858, 73 L.Ed. 598 (1982).

On the basis of the foregoing, and in consideration of the Defendants' consent to comply with paragraphs 2, 3 and 4 of the

TRO Motion on or before the close of business on June 27, 1988, the Court orders as follows:

(1) Shelly's request for a temporary restraining order is hereby DENIED;

(2) Shelly's Motion for a Preliminary Injunction is hereby set for hearing on July 6, 1988, at 9:30 a.m., in Courtroom 126; and

(3) A pre-hearing conference is hereby scheduled in this matter for July 5, 1988, at 10:00 a.m. in Courtroom 126.

IT IS SO ORDERED.