**In re 1345 MAIN PARTNERS, LTD., Debtor.**

**Bankruptcy No. 97–16048.**

United States Bankruptcy Court,
S.D. Ohio,
Western Division.

Dec. 2, 1997.

Donald J. Rafferty, Cohen, Todd, Kite & Stanford, Cincinnati, OH, for Debtor.

Robert A. Goering, Goering & Goering, Cincinnati, OH, for Collins.

### DECISIONS ON MOTION FOR SUMMARY JUDGMENT AND MOTION TO RETURN TO PREMISES

JEFFERY P. HOPKINS, Bankruptcy Judge.

This Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1334. This proceeding arises in a case referred to this Court by the standing order of Reference entered in this district and is determined to be a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(A), (E). The Court is authorized to enter final judgment in this proceeding. An evidentiary hearing was held on November 17, 1997, and November 24, 1997. The following constitutes the Court's findings of facts and conclusions of law in accordance with Bankruptcy Rule 7052.

In reaching its determinations, the Court considered the demeanor and credibility of all witnesses who testified and the contents of all exhibits admitted, whether each specified item of evidence is referred to in the Court's decision or not. The Court also considered the written memoranda and the oral argument of counsel. The facts pertinent to this Court's determinations are as follows:

### I

On December 8, 1994, Debtor, 1345 Main Partners, Ltd.;[1] entered into a written lease with the landlord, Michael Collins. The premises consist of the first floor and basement units and part of an adjoining courtyard of commercial real estate located at that same address in the Main Street district of Cincinnati. After substantial renovations were completed in February 1997, Debtor began operating a restaurant and bar under the name "Fritz's Saloon and Eatery" in the leased premises.

Collins also operates Nomax Enterprises, Inc. ("Nomax") a general contractor which specializes in restoring older buildings. Under a construction contract with Debtor, Nomax performed and was paid handsomely by Debtor for substantial renovations done on the leased premises including installation of the heating and air-conditioning system. The original term of the lease runs for five years, with rent payable at a rate of $3,500 on the first day of every month commencing on January 1, 1997. The lease also contains a grace period of ten days from the beginning of each month within which Debtor is required to make rental payments. An option to renew for an additional five years is included in the lease.

The provisions of the lease relevant to the present dispute in this case read as follows:

---

1. The original lease was executed by 1345 Main Partners, an Ohio general partnership. Collins argues, therefore, that the Debtor is not a party to the lease in dispute. That argument is not well-taken. Carl Perin, Debtor's general partner, testified that the lease was executed by the general partnership because the limited partnership had not yet been formed. In addition, the evidence suggests that Collins needed to have the lease agreement executed in order to receive financing and all the parties understood that the

lease would later be assigned to another 1345 Main partnership entity. Furthermore, Paragraph 16 of the lease permits the Lessee to assign the lease without the consent of Collins. Similarly, Paragraph 25 provides that the benefits of the lease shall inure to the Lessor and the Lessee and their assigns. Finally, the separate agreement establishing the commencement date of the lease was entered between Debtor, 1345 Main Partners, Ltd., and Collins, clearly demonstrating to Collins that the lease had been assigned.

2.1 During the Term, Lessee will pay to Lessor monthly rental, on the first day of each month, in advance, of $3,500.00, without any right of deduction or setoff whatsoever.

. . .

7. Lessee may make structural alterations to the Premises only with the written consent of Lessor. Lessee may make decorative alterations and install any fixtures without the written consent of Lessor. Upon the termination of the Lease for any cause whatsoever, all personal property and trade fixtures of Lessee, whether such is installed in, located on, or attached to the Premises shall be and remain the absolute property of Lessee and may be removed by Lessee at his sole option.

. . .

17. If (i) any installment of rent shall remain unpaid for ten (10) days after the same becomes due; . . . it shall be lawful for Lessor, in any such event and without notice, to re-enter the Premises and again have, repossess and enjoy the same as if this Lease had not been made, and thereupon this Lease and everything herein contained on the part of the Lessor to be done and performed shall cease, terminate and be utterly void.

The events leading up to this dispute arose in September 1997. Debtor did not pay rent for the month of September as required under the terms of the lease. From the testimony it appears the parties were embroiled in several ongoing disputes regarding the leased premises including the construction and placement of certain exterior lighting fixtures on the second floor of the building at 1345 Main Street. The dispute concerning the exterior lighting was apparently the subject of a separate oral agreement between the parties, the terms of which are only marginally relevant to deciding the matter presently before this Court. However, as the result of the removal of the exterior lights by Collins, Debtor refused to tender the September rent. Efforts to enter an agreement to arbitrate their disputes concerning, among other items, the removal of the lighting fixtures and withholding of Sep-

tember rent did not materialize despite earnest attempts at settlement by both parties.

On September 12, less than 48 hours beyond the expiration of the specified grace period in the lease, Collins declared a forfeiture under the self-help provisions contained in Paragraph 17 of the lease. Collins also bolted the doors to the premises shut prohibiting Debtor from further doing business or reentering the leasehold to remove any personal possessions or fixtures. The evidence shows that while these parties have had a truly tortuous and contemptuous relationship, the sole reason given by Collins for the self-help eviction under the terms of the lease was Debtor's nonpayment of September rent.

Analyzing the provisions of the lease, it is apparent that Collins has technically complied with the provisions of Paragraph 17 authorizing the lessor to seek termination in the event Debtor fails to make monthly rental payments. It is undisputed that Debtor failed to timely pay the September 1997 rent within the ten-day grace period required by the lease. As such, the very terms of the lease vested in the lessor the right to peacefully re-enter and claim possession of the leasehold as though the lease had not been made in the first instance.

On September 12, after Debtor discovered that the doors to the establishment had been bolted closed and that Collins did not intend to allow Debtor to further conduct business, Debtor filed a Complaint and a Motion for a Temporary Restraining Order (TRO) in state court. That matter was assigned to Judge Dinkelacker of the Court of Common Pleas for Hamilton County. Following an evidentiary hearing on September 12, Judge Dinkelacker issued an oral decision denying Debtor's Motion for a TRO. In a subsequent motion filed by Debtor for monetary damages and other equitable relief Judge Dinkelacker, on October 9, 1997, issued a written order again rejecting Debtor's Complaint and request for further injunctive relief. However, on October 2, 1997, before the state court's written order was entered, Debtor filed this petition for relief under Chapter 11 of the Bankruptcy Code. The present motion seeking re-entry into the premises was filed

by Debtor within a few weeks of the petition on October 30, 1997.

## II

Debtor's motion seeks a declaration that Collins be prohibited from forfeiting the lease. In support of the motion, Debtor also interposes an equitable defense claiming primarily that Debtor was justified in withholding September rent because of Collins' alleged unlawful removal of the exterior lights which the Debtor had installed to illuminate the exterior facade to the leasehold. As occurred in the state court proceedings, Debtor again asks for an order allowing it to regain possession of the premises, and as assurance of its future performance Debtor offers to cure all rent arrears due under the lease. Apparently, Debtor desires to assume the lease with Collins as an executory contract, pursuant to 11 U.S.C. § 365(b). *See* Rule 6006, Fed. R. Bankr.P.

Collins argues, in essence, that Debtor's lease effectively terminated prior to the bankruptcy petition under the self-help provisions contained in the lease and that Debtor's interest under the lease was no longer property of the estate on the date that the Chapter 11 case commenced by virtue of § 541(b)(2).[2] Collins also contends that Debtor's motion is barred under *res judicata* because Judge Dinkelacker's order rejecting the Complaint and Motion for a Temporary Restraining Order constitutes a final determination on the merits. It appears that Debtor has abandoned its request for damages allegedly caused by a violation of the automatic stay imposed under § 362(a) since no evidence of economic harm caused by the alleged unlawful eviction was ever presented at the hearing.

This Court determined in an oral ruling issued on November 24, 1997, that Judge Dinkelacker's decision rendered September 12, 1997, related only to Debtor's request for a temporary restraining order and did not constitute a final decision on the merits. The doctrine of *res judicata* operates as a bar to a subsequent action when these four elements are present: (i) a final decision on the merits; (ii) the second action involves the same parties, or their privies; (iii) the second action raises issues actually litigated or which should have been litigated in the first action and (iv) identity of the causes of action. *See Sanders Confectionery Products, Inc. v. Heller Financial,* 973 F.2d 474, 480 (6th Cir.1992).

We do not believe that Judge Dinkelacker's ruling in the state court proceedings is binding on this Court because the first and fourth elements of *res judicata* have not been met. *General Protestant Orphans' Home v. Ivey,* 240 F.2d 239 (6th Cir.1956)(although proceedings in state court suit and bankruptcy proceedings as to a particular claim were identical, the state issued temporary restraining order was not *res judicata* because the causes of action were not identical); *also see Kalk v. Village of Woodmere,* 27 Ohio App.3d 145, 149, 500 N.E.2d 384 (1985)("The doctrines of *res judicata* and collateral estoppel apply only where a court has in a prior action decided a particular matter (1) between the same parties, and (2) carried its decision to final judgment. An order granting a temporary or preliminary injunction is not a judgment.")

Here, the issues presented in the state court appear to be virtually identical to those being litigated in these proceedings. However, unlike the present case, Judge Dinkelacker only examined those issues to determine whether Debtor was entitled to a temporary restraining order under the version of Rule 65(A) adopted by the State of Ohio. Ohio Rule 65 is modeled after the Federal Rule and incorporates many of the same provisions. *See Adams v. Ohio Dep't of Health,* 356 N.E.2d 324, 5 Ohio Op.3d 148 (Ohio Com.Pl.1976)(Ohio Civil Rule 65 is analogous to Federal Rule of Civil Procedure 65); Ohio Civ. R. 65 (Staff Notes). Trial courts in

---

**2.** 11 U.S.C. § 541(b)(2) reads:
(b) Property of the estate does not include-
. . .
(2) any interest of the debtor as a lessee under a lease of nonresidential real property that has terminated at the expiration of the stated term of such lease before the commencement of the case under this title, and ceases to include any interest of the debtor as a lessee under a lease of nonresidential real property that has terminated at the expiration of the stated term of such lease during the case.

Ohio, similar to their federal counterparts at TRO hearings, seek only to determine whether it is necessary to maintain the status quo pending a final determination of the suit on the merits, or at least, until a preliminary injunction hearing can be conducted. *See State, ex rel. Tollis v. Cuyahoga Cty.*, 40 Ohio St.3d 145, 532 N.E.2d 727 (1988)(A TRO granted by a lower court is not a final appealable order.); *In re Shelly's, Inc.*, 87 B.R. 931 (Bankr.S.D.Ohio 1988)(Cole, J). Thus, the state court judge only considered Debtor's probability of success on the merits, whether the irreparable harm to Debtor outweighed the harm to Collins and the public interest. Based on those considerations, Judge Dinkelacker determined that Debtor was not entitled to a temporary restraining order. The state court did not issue a final appealable order, nor was it required to given the nature of those proceedings. The ultimate issue for determination in this case concerning whether Collins could lawfully declare the lease forfeited under Ohio law still remains unresolved. Thus, *res judicata* does not bar this Court from rehearing those issues.

■ We note, at the outset, that as a general rule, the filing of a bankruptcy petition does not resurrect a lease, and a bankruptcy court does not have the power to resurrect a lease which was properly terminated under state law prior to the bankruptcy petition. *See In re Waterkist Corp.*, 775 F.2d 1089 (9th Cir.1985). We further note that several courts, when confronted with this issue, have held that a nonresidential lease agreement which terminates prior to a bankruptcy filing by operation of a default clause, such as one that forfeits the lease because of nonpayment of rent by the tenant, can not be resurrected by the affected lessee after a bankruptcy has been declared. However, a careful reading of those cases reveals that in each, the courts have relied heavily on an interpretation of the lease provisions and the applicable state laws in concluding that the leases had been properly terminated, thus limiting application of those cases. *See, e.g., Matter of Mimi's of Atlanta, Inc.*, 5 B.R. 623, 628 (1980)("[T]he leases in question have been validly terminated as provided by the agreements and applicable [Georgia] state law."); *Bell v. Alden Owners, Inc.*, 199 B.R. 451, 458 (S.D.N.Y.1996)(applying New York landlord-tenant law). The question, in our case, then becomes whether compliance with the self-help lease provisions entitles Collins to declare the lease forfeited under applicable state law in this jurisdiction. In considering this issue we must first determine whether the lease was still valid and enforceable under Ohio law at the commencement of the bankruptcy case.

■ Courts in Ohio have determined that lessors can opt to terminate a nonresidential lease under a forfeiture clause in the lease in limited circumstances and only upon satisfaction of a four part test: (i) the tenant unlawfully holds over or is in breach of the lease; (ii) the landlord gives notice of the termination, if required, or notice of and an opportunity to cure the breach; (iii) a provision in the lease provides for self-help repossession; and (iv) the repossession is accomplished without a breach of the peace. *Quigg v. Mullins*, 1991 WL 59886 (Ohio Ct.App.1991), citing *Craig Wrecking Co. v. S.G. Loewendick & Sons, Inc.*, 38 Ohio App.3d 79, 526 N.E.2d 321 (1987) and *Northfield Park Associates v. Northeast Ohio Harness*, 36 Ohio App.3d 14, 521 N.E.2d 466 (1987).

■ Moreover, this Court interpreting Ohio law which follows the majority view has previously stated that:

Clauses in written leases which give lessors the right to declare forfeiture of a lease for nonpayment of rent are valid. However, unless a lessee's conduct is willful or malicious, or if compensation for the breach cannot be made due to the lessor, a court exercising its equity powers will grant the lessee relief from forfeiture. *The forfeiture clause for nonpayment of rent is not strictly construed, rather, it is viewed as merely security for the payment of rent.* The courts will balance the equities of the case and relieve the forfeiture where the equities favor the lessee.

Numerous Ohio cases involving lease agreements stand for the proposition that equity abhors a forfeiture and that a forfeiture will not be declared where the equities of the parties can be adjusted.

542

In re Fry Bros. Co., 52 B.R. 169 (Bankr. S.D.Ohio 1985)(Perlman, J.) citing *Peppe v. Knoepp*, 103 Ohio App. 223, 140 N.E.2d 26 (1956).

■ Turning now to the equities in this case, we note that the lease does not require notice of termination. Paragraph 17 of the lease permits Collins to re-enter and take possession of the premises without notice in the event of a default. Default includes non-payment of the rent for any period in excess of the ten-day grace period from the date the rent was due, which in this case was September 1, 1997. The evidence shows that the rent was in fact never tendered within the ten-day grace period as required by the lease. While Collins' testified that he had in the past sent debtor notices of default, he never acted on those notices and did not send any notice of the default for nonpayment of the September 1997 rent. Technically, however, Collins was in full compliance with the terms of the lease when he peacefully re-entered and took possession of the premises on the morning of September 12. "Absent a breach of the peace and pursuant to a valid lease provision, a commercial lessor may resort to self-help repossession as a remedy to a lessee's breach of the lease agreement." *See Craig Wrecking Co. v. Loewendick & Sons, Inc.*, 38 Ohio App.3d at 83, 526 N.E.2d 321 (1987).

■ However, when a lessee raises an equitable defense to a self-help eviction in Ohio as has been done in this case, a court must balance all the equities in order to determine whether the lease forfeiture should be upheld. *In re Fry Bros. Co.*, 52 B.R. 169; *Southern Hotel Co. v. Miscott*, 44 Ohio App.2d 217, 337 N.E.2d 660 (1975). Debtor was extremely ill-advised to withhold rental payments unless it also was willing to risk the potential forfeiture of the lease under the self-help provisions of the lease or an eviction from the premises by the lessor pursuant to a forcible entry and detainer action filed in state court. *See* R.C.1923.01, *et. seq.;* R.C. 5321.15(A).

■ Irregardless, the Court finds that the equities in this case flow in favor of the Debtor. While both parties have invested substantial amounts of money, time and energy into the purchase and renovation of this property, Debtor was caught totally off guard by Collins' actions in pursuing a forfeiture of the lease without any notice or opportunity to cure. Collins' actions appear particularly drastic because the parties were simultaneously attempting to negotiate an agreement to arbitrate numerous disputes surrounding their highly combustible landlord-tenant relationship including the September rent matter. In addition, by Collins' own admissions, Debtor had not defaulted under any of the other lease provisions prior to this incident a factor which is particularly relevant in these type cases. *See Northfield Park*, 36 Ohio App.3d at 22, 521 N.E.2d 466, ("[Lessee] was in breach of many of the provisions of the lease, not just the one pertaining to rent.")

Further, Debtor has made substantial improvements to the leased premises estimated in value to exceed over $400,000, which was never disputed by Collins. And, according to the lease, all personal property and trade fixtures located on or attached to the premises remain the absolute property of the Debtor and may be removed by Debtor at his sole option upon the termination of the lease for any cause, the event of which in this Court's view would constitute an incredible waste of resources. Finally, and perhaps most importantly, it would be impossible for Debtor to attempt to reorganize its business under the protection of Chapter 11 unless it has possession and use of the premises covered by the lease.[3]

Any breach of the lease by Debtor was merely technical. This Court does not believe on this record and under the applicable Ohio law that the landlord should be allowed to declare the lease forfeited for such an immaterial breach, particularly where payment of rent will adequately compensate Collins for any technical breach of the terms of

**3.** *In the Matter of Triangle Laboratories, Inc.*, 663 F.2d 463 (3d Cir.1981) (unambiguous and clearly expressed termination provisions in a lease will be given effect unless doing so will contravene the purposes of the Bankruptcy Act including considerations of whether forfeiture will make it impossible for a debtor to reorganize, cause complete loss to creditors, or deprive debtor of its primary asset).

the lease.[4] *See Southern Hotel Co.*, 44 Ohio App.2d 217, 337 N.E.2d 660 (court balanced the equities and determined payment of rent would adequately compensate landlord).

█ In the future, however, should Debtor become delinquent on rental payments or commit any other material breach of the terms of the lease, Collins may exercise his right to immediately pursue relief from the automatic stay pursuant to 11 U.S.C. § 362. Since relief from the stay also includes "conditioning the continuance of the automatic stay," this Court has the authority to enter an order which provides for the automatic termination of the stay if the Debtor attempts to occupy the premises without timely making the required rental payments, a power that the Court will not hesitate to exercise should the facts so warrant. *See* 11 U.S.C. § 362(d). *Also see Matter of Mimi's of Atlanta, Inc.*, 5 B.R. at 629 (Not only did the bankruptcy court remove the automatic stay imposed by § 362, the court also granted the landlord possession of the premises finding that the reinstitution of state court proceedings would cause "unconscionable delay, and would allow debtors to work an abuse of the judicial process.")

Accordingly, Collins' motion for summary judgment is hereby **DENIED**. Debtor's motion for the return of the premises located at 1345 Main Street covered by the lease in question is hereby **GRANTED**. However, Debtor shall only be permitted to take possession of the premises after promptly curing the rent arrears and paying all other applicable charges due under the lease. *See* 11 U.S.C. § 365(b).

**IT IS FURTHER ORDERED** that Debtor shall promptly make all rental payments on the 1st day of each month throughout the term of the lease, pending confirmation of Debtor's Chapter 11 plan. In the event that Debtor fails to make rental payments to Collins by the 10th of each month, or Debtor commits a material breach of any other provision of the lease, the Court may, upon the filing of a motion by Collins, enter such order conditioning the stay as is appropriate to ensure compliance, pursuant to 11 U.S.C. §§ 105 and 362(d).

The remaining issues involving the premises, including assumption of the lease,[5] payment of rent arrears, and additional disputes between the parties shall be presented to the Court by motion of the parties. The parties are admonished, however, that they are likely to find the Court far less tolerant and more inclined to impose sanctions against them if the Court is called upon to resolve disputes concerning matters which are the subject of the lease agreement or any separate oral agreements the parties may have entered regarding the placement of exterior lighting, signage or the like.

**IT IS SO ORDERED.**

█

---

**4.** We note also that Paragraph 17 of the lease provides that "[I]f Lessee shall fail to keep and perform any of the terms, covenants or conditions of this Lease to be kept or performed by him and fails to cure such default for thirty (30) *days after written notice from Lessor ....*" then the lessor can declare the lease terminated. Collins admittedly failed to give Debtor notice and an opportunity to cure the default which occurred in this case before employing the self-help provisions of the lease. The Court believes that this omission breaches an important term of the lease and provides a separate basis for preventing the lessor from claiming that the lease had been forfeited prior to the filing of the bankruptcy case.

**5.** We note that on December 1, 1997, Debtor filed a motion for extension of the time in which to assume or reject the lease.